No. 93-616

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

KATHARINE S. BOREEN

      Plaintiff and Appellant,

  -v-

GEORGE CHRISTENSEN, a/k/a
GEORGE P. CHRISTENSEN, a/k/a
"CHRIS" CHRISTENSEN, and
F. GUY YOUNGBLOOD, acting
individually and in the capacities
of administrative officers of the
DEPARTMENT OF MILITARY AFFAIRS,
STATE OF MONTANA,

      Defendants and Respondents.

**FILED**

OCT 20 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Peter Michael Meloy, Meloy & Morrison, Helena,
          Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General, James
          Scheier, Assistant Attorney General, Helena, Montana

      For Amicus:

          Stanley T. Kaleczyc, Browning, Kaleczyc, Berry &
          Hoven, Helena, Montana (Montana League of Cities and
          Towns and Montana Association of Counties)

                      Submitted on Briefs:  July 26, 1994

                              Decided:  October 20, 1994

Filed:

                              Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from an order of the First Judicial District Court, Lewis and Clark County, dismissing the complaint of plaintiff/appellant Katharine S. Boreen (Boreen) alleging constructive discharge from her employment and violations of 42 U.S.C. §§ 1983 (§ 1983) and 1988. We reverse and remand.

The sole issue on appeal is whether the District Court erred in dismissing Boreen's complaint for failure to state a claim on which relief can be granted because she did not have a property interest in her employment and, therefore, no due process rights under the Fourteenth Amendment.

FACTUAL BACKGROUND

Boreen's complaint alleges that she was employed by the Montana Department of Military Affairs until she was terminated on April 13, 1990. The complaint states that George Christensen (Christensen) and F. Guy Youngblood (Youngblood) "render[ed] her working conditions so intolerable that a reasonable person under the circumstances would have no other choice but to resign." She further alleges that, by virtue of the personnel policies of the State of Montana, she could not be terminated (constructively discharged) without just cause, and that she had a property interest in her employment by reason of these policies.

Christensen and Youngblood were administrative officers at the Montana Department of Military Affairs who, according to Boreen, "acting as individuals, and acting under color of state law, in their capacities as administrative officers of the Department of

2

Military Affairs" deprived her of her property interest in employment by constructively terminating her without due process of law. She sought an award of compensatory and general damages and attorney fees.

## PROCEDURAL BACKGROUND

Boreen filed her complaint on April 5, 1993. On July 2, 1993, Youngblood filed a motion to dismiss the complaint and for a protective order. The District Court heard argument on the motion to dismiss and protective order and granted leave to file an amended complaint on July 7, 1993. On July 19, 1993, Youngblood filed an answer to the amended complaint, stating that the complaint failed to state a claim upon which relief could be granted. He also filed a motion to dismiss the amended complaint as well as a motion for summary judgment. Counsel for both parties argued the motion to dismiss and for summary judgment on August 26, 1993. On November 16, 1993, the District Court issued its order, granting the motion to dismiss, concluding that Boreen had no property interest in her state employment and therefore, had failed to state a claim under § 1983. This appeal followed.

## STANDARD OF REVIEW

Our standard of review of district court rulings on motions to dismiss under Rule 12(b)(6), M.R.Civ.P., is set forth in Willson v. Taylor (1981), 194 Mont. 123, 634 P.2d 1180:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the

> complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

Willson, 634 P.2d at 1182. (Citations omitted.) The District Court's determination that Boreen's complaint failed to state a claim is a conclusion of law. Our standard of review of the trial court's conclusions of law is whether the tribunal's interpretation of the law is correct. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

## PROPERTY INTEREST IN EMPLOYMENT

Boreen contends that the personnel policies of the State of Montana provide her with a property interest in continued employment of which she cannot be deprived without due process of law and which is sufficient to trigger the remedial protection of § 1983. Those personnel policies, found in Title 2, Chapter 21, sub-chapter 65 of the Administrative Rules of Montana (ARM) are set forth in pertinent part as Appendix A to this opinion.

The State counters that Boreen was an "at will" employee and that, pursuant to § 39-2-503, MCA, and applicable case law, she has no property interest in continued employment. The State further contends that the "just cause" provisions in its personnel policies on which Boreen bases her claim do not create a property interest in employment.

Boreen argues, and we agree, that the United States Supreme Court's decision in Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, and other pertinent case law, should serve as our guide in deciding this

4

issue of first impression--whether the "just cause" provisions of the administrative regulations which comprise the personnel policies of the State of Montana create a property interest in employment sufficient to trigger the due process protections afforded by the Fourteenth Amendment of the United States Constitution and the remedial protections afforded under § 1983.

LOUDERMILL

Loudermill involved a security guard's challenge to his dismissal by the Cleveland Board of Education. On his job application Loudermill erroneously stated that he had never been convicted of a felony. Subsequently, on discovering that he had been convicted of grand larceny, the Board dismissed him for dishonesty in filling out his job application.

In his suit in federal district court, Loudermill claimed that his due process rights were violated because he was discharged without an opportunity to respond to the charges against him and to challenge his dismissal prior to his removal from his position. Under Ohio law, Loudermill was a "classified civil servant" subject to termination only for cause and with the right to obtain administrative review upon discharge from employment. Loudermill reached the United States Supreme Court with a companion case presenting the same issue involving Donnelly, a bus mechanic employed by the Parma Board of Education.

In reviewing the precedential underpinnings for its decision, the Loudermill Court set forth certain basic legal principles that govern the application of due process protection to employment

5

termination cases:

> Respondents' federal constitutional claim depends on their having had a property right in continued employment. Board of Regents v. Roth, 408 U.S. 564, 576-578 (1972); Reagan v. United States, 182 U.S. 419, 425 (1901). If they did, the State could not deprive them of this property without due process. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11-12 (1978); Goss v. Lopez, 419 U.S. 565, 573-574 (1975).
>
> Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709. See also Paul v. Davis, 424 U.S. 693, 709 (1976).

Loudermill, 470 U.S. at 538.

Concluding that the Ohio statute at issue created such a property interest, the court observed that Loudermill was a "'classified civil service employe[e],' entitled to retain [his] positio[n] 'during good behavior and efficient service,' who could not be dismissed 'except . . . for . . . misfeasance, malfeasance, or nonfeasance in office.'" (Citation omitted.) This statute, the court determined, supported the conclusion that Loudermill had a property interest in his continued employment by the school district.

Rejecting outright the position of the plurality in Arnett v. Kennedy (1974), 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, that the employee's property right is defined by, and conditioned on, the legislature's choice of procedures for its deprivation, the Loudermill court stated:

> . . . the Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure

6

are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

Loudermill, 470 U.S. at 541. (Citation omitted.)

The court then proceeded to delineate what administrative process was due Loudermill according to the due process guarantees of the federal constitution and prior case law. The court concluded that due process simply required oral or written notice to the employee with an explanation of the employer's evidence and the opportunity for the employee to respond in "something less" than a full evidentiary hearing before termination, coupled with a full post-termination hearing "at a meaningful time." Loudermill, 470 U.S. 546-47. As stated by the court,

[h]ere, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

Loudermill, 470 U.S. at 545-46. (Citation omitted.)

MONTANA CASE LAW

While this Court has dealt with the termination of "at will" employment in the context of claims alleging violations of due process, we have not yet addressed the issue presented here-- whether an administrative regulation can create a property interest in continued employment sufficient to trigger the due process

7

protections afforded by the Montana Constitution and the Fourteenth Amendment of the federal constitution, remedial under § 1983. The two primary Montana cases cited by both parties which impact this issue are: Reiter v. Yellowstone Cty. (1981), 192 Mont. 194, 627 P.2d 845, and Medicine Horse v. Big Horn Cty. Sch. D. (1991), 251 Mont. 65, 823 P.2d 230. Two recent federal court decisions, Stokes v. Lamma (D. Mont. 1993), CV-93-016-GF, an unpublished decision of the United States District Court of Montana--Great Falls and Hollister v. Forsythe (9th Cir. 1994), 22 F.3d 950, are also cited and argued by the parties, and will be discussed.

In Reiter, an employee who had been a custodian for the Yellowstone County Courthouse, was discharged without a hearing and subsequently brought an action in the district court seeking reinstatement and back pay. Reiter argued that because he had served in his position for a long time and was a permanent employee, he had a property interest in continued employment and was entitled to procedural due process before termination. Relying on Perry v. Sindermann (1972), 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, (an employee "who ha[d] held [a] position for a number of years, might be able to show from the circumstances of this service - and from other relevant facts - that he has a legitimate claim of entitlement to job tenure . . .,") Reiter claimed that his longevity of service, supervisory position, retirement and insurance benefits, and the promise of a hearing upon discharge were factors which gave him a "legitimate claim of entitlement to continued employment." Reiter, 627 P.2d at 848.

8

This Court concluded that the "at will" statute, § 39-2-503, MCA, which stated that "[a]n employment having no specified term may be terminated at the will of either party on notice to the other . . . ," was controlling. We held that, "[t]he Montana statute create[d] no property interest in employment if there [was] no specified term" and, therefore, Reiter had no property interest protected by the United States and Montana Constitutions. Reiter, 627 P.2d at 849-50.

Moreover, in response to Reiter's contention that the implied covenant of good faith and fair dealing created a property interest in employment sufficient to trigger the necessity for due process procedures, we concluded that this argument could not circumvent the "at will" statute which "clearly denies his claim of entitlement to continued employment." Reiter, 627 P.2d at 849. We stated:

> Even though appellant may have had an implied contract with the county by virtue of his longevity of service, it would be a contradiction in terms to say that he had an "implied specified" period of employment. A specified term is one which the parties expressed, and there was no expression here concerning the length of employment. Section 39-2-503, MCA, operates to fill the gap left by the parties by defining the relationship as an "at-will" employment. While the rule may well be outdated, it is uniquely a province of the legislature to change it.

Reiter, 627 P.2d at 849.

Importantly, Reiter did not raise, nor did we address, the effect on the "at will" nature of the plaintiff's employment of the parties conditioning termination on a demonstration of "just cause" under an administrative regulation adopted by the government. In

9

fact, we specifically pointed out that Reiter's employment "was not covered by any written contract or collective bargaining agreement or ordinance." Reiter 627 P.2d at 847.

In Medicine Horse, citing our holding in Reiter that the employee ". . . had no property interest in his position by virtue of his years of service, absent a contractually specified term of employment," we held that, failing to present a written contract, state law or regulation stating or otherwise indicating that he had a property interest in his position as custodian, Scott Medicine Horse was an "at will" employee without a constitutionally protected property interest in his continued employment. Medicine Horse, 823 P.2d at 233.

Medicine Horse, employed by the Big Horn County School District for four years, was involved in a number of work-related problems which culminated in his discharge by the Board of Trustees at a meeting on December 20, 1988. He requested a hearing after being informed of the termination. The hearing took place on January 17, 1989, but the trustees did not take action after the hearing, and the discharge remained in effect.

Medicine Horse appealed the discharge until it reached the District Court on a petition for judicial review under the Montana Administrative Procedure Act. He contended on appeal that he should have been provided with written notice of the reasons for his termination and that he should have received a pre-termination hearing. Medicine Horse asserted that he was a permanent employee and, thus, had a property interest in continued employment. The

10

Board maintained that he was an "at will" employee, had notification of the board's consideration of his termination and was provided with a post-termination hearing even though it was discretionary with the trustees.

We agreed with the Board and concluded that Medicine Horse was an "at will" employee because his term of employment had no specific duration. We quoted Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, for the proposition that "[a] property interest in one's position must be created by existing rules or regulations, state laws, or understandings between employee and employer." Medicine Horse, 823 P.2d at 233. We then concluded that Medicine Horse was not entitled to a pre-termination hearing because he could present ". . . no written contract, state law, or regulation specifically stating or otherwise indicating that he had a property interest in his position as a custodian." Medicine Horse, 823 P.2d at 233.

In so holding, we rejected various arguments presented by Medicine Horse in support of his position. We disagreed that the written policy applicable to his position created a property interest. We concluded that, under the policy, he could be "terminated at any time and that a hearing may be provided . . . at the discretion of the trustees . . . [and that the] policy does not support the appellant's claim of a property interest in his position." Medicine Horse, 823 P.2d at 233. We also rejected Medicine Horse's contention that he gained a property interest in his employment by passing his probationary period and that, having

11

done so, he reasonably expected that his employment would continue. *Medicine Horse*, 823 P.2d at 233-34. Finally, we disagreed with Medicine Horse's contention that "at will" employment was not a viable doctrine in Montana, stating that "neither [the Wrongful Discharge From Employment Act] nor any other action by the Montana Legislature or this Court has nullified the 'at will' designation or § 39-2-503, MCA." *Medicine Horse*, 823 P.2d at 232.

Notwithstanding the various arguments which we rejected, a careful reading of *Medicine Horse* reveals that, as in *Reiter*, we did not rule on the issue presented in the instant case. To the contrary, our decision in *Medicine Horse*, specifically left for future resolution the case where, unlike Medicine Horse, a plaintiff did present ". . . [a] state law, or regulation specifically stating or otherwise indicating that he had a property interest in his position. . . ." *Medicine Horse*, 823 P.2d at 233.

### THE INSTANT CASE

We are, here, faced with that case--an employee who does point to specific administrative regulations which state that disciplinary actions, such as termination of employment, must be conditioned upon "just cause" and that due process procedures, including notice and an opportunity to respond, must be followed as a part of the disciplinary action or termination.

In the instant case, the District Court stated that because *Medicine Horse* held that an at will employee did not have a property interest in continued employment and that the WDFEA did not alter the statutory at will definition, the WDFEA would not

12

provide Boreen with a property interest in employment. The District Court stated that the federal district court's decision in Stokes, relying on Medicine Horse, held that the WDFEA did not create a property interest in employment by imposing the good cause requirement on the termination of an at will employee. The District Court then concluded that if the WDFEA did not create a property interest in continued employment, administrative regulations could not create such a property interest either.

The problem with that reasoning is that, as discussed in some detail below, Stokes did not correctly interpret our prior case law, nor have we addressed directly the issue of whether the WDFEA creates a property interest in continued employment through the good cause requirement of § 39-2-904(2), MCA. That precise issue, moreover, is not presently before this Court, and we are not deciding that question in this case.

What is at issue are administrative regulations of the Department of Military Affairs--the State of Montana--which mandate that disciplinary action against its employees, including discharge, be taken only for "just cause," as defined, and then, only in accordance with the procedures set forth in such regulations. We conclude that the regulations at issue here support Boreen's argument that she had a property interest in her continued employment. We further conclude that these regulations do provide Boreen with a specified term of employment. Under the regulations, Boreen was entitled to remain in her position of employment until there was "just cause" for her termination. While

13

Boreen's term of employment may not have been expressed in days, months or years, it was, nevertheless, expressed in relation to a definite period of time during which Boreen could reasonably expect her employment to continue--i.e., until her employer established one of the defined "just cause" reasons why her employment should end. Here, the administrative regulations of the State confer upon employees such as Boreen, a specified term of employment and, in turn, create a property interest in the continuation of that employment, absent a demonstration by the employer of just cause why the employment should be terminated. Medicine Horse, 823 P.2d at 233.

Moreover, our conclusion that the administrative regulations at issue provide Boreen with a property interest in continued employment does not nullify the at will statute. We simply conclude that Boreen is not an at will employee--i.e., one whose employment has no specified term, or, as we indicated in Scott v. Eagle Watch Investments Inc. (1991), 251 Mont. 191, 828 P.2d 1346, one who is subject to discharge "for a good reason, bad reason, or for no reason at all." Scott, 828 P.2d at 1349.

As we stated in Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015, under certain facts, "the term of employment. . . [may go]. . . beyond the indefinite period contemplated in the at will employment statute, Section 39-2-503, MCA, and. . . [be]. . . founded upon some more secure and objective basis." Dare, 687 P.2d at 1020. Unlike Reiter and Medicine Horse, who could point to no contract, statute or regulation protecting

14

their employment, Boreen is covered by regulations that do protect her employment. While Reiter and Medicine Horse did not have a specified term of employment and thus, no entitlement to continued employment, Boreen is entitled to remain in her job until her employer establishes "just cause" that she should be terminated. While Reiter and Medicine Horse were simply employees at will, Boreen's employment has gone beyond the indefinite period contemplated in the at will employment statute, and is founded upon the "more secure and objective basis" of "just cause" mandated by the State's personnel policies. See Dare, 687 P.2d at 1020. Boreen can only be terminated for "just cause;" she may not be terminated for a bad reason or no reason at all. Scott, 828 P.2d at 1349. Simply put, Boreen is not an at will employee. Absent such an interpretation, the requirements of the regulation would be meaningless and illusory and would afford the employee little, if any, protection from or remedy for discharge without "just cause." Our decisions in Medicine Horse and Reiter, which interpret § 39-2-503, MCA, are not affected by this ruling; a careful reading of those cases, in fact, suggests our decision here.

In summary, we hold, that where, as here, the government employer has, by administrative regulation, limited its ability to impose on its employee the ultimate form of discipline, i.e., discharge, absent a showing of "just cause," as defined in the regulation, then the employer has, by such regulation, abrogated the "at will" employment relationship. Rather, the regulation creates a specified term of employment. Therefore, the employee is

15

entitled to expect that his employment will continue until the employer demonstrates "just cause" why the employee should be discharged. Moreover, we hold that such a regulatory scheme creates a property interest in the employee's continued employment which is protected by the due process provisions of the federal and Montana Constitutions.

As mentioned above, following Medicine Horse, two federal courts, interpreting the decisions of this Court, ruled that the affected Montana employee had not demonstrated a constitutionally protected property interest in continued employment. Inasmuch as Stokes is referred to by the District Court in its decision and both Stokes and Hollister are raised and vigorously argued in the briefs, we will discuss those two opinions. In so doing, however, we emphasize at the outset that we are not constrained by the interpretations placed upon our decisions by the federal judiciary, and, as indicated by our opinion here, we necessarily do not agree with the conclusions of the federal courts involved.

In Stokes, an action filed in United States District Court for the District of Montana - Great Falls Division, Medicine Horse was discussed at length. In that case, Stokes resigned from her position with the office of the Clerk and Recorder in Pondera County. In addition to an action under the Wrongful Discharge from Employment Act, she filed her § 1983 action alleging intolerable working conditions and contending that her constructive discharge deprived her of due process rights under the Fourteenth Amendment. The court dismissed her complaint, concluding that it failed to

state a claim cognizable under § 1983, and declined jurisdiction of the pendent WDFEA claim. Stokes, at 2.

The defendants asserted that Stokes was an "at will" employee having no definite term of employment, no legitimate entitlement to public employment, and accordingly, no constitutionally protected property interest in her job under Montana law. Stokes contended that the WDFEA "statutorily create[d] a legitimate entitlement to continued public employment . . ." Stokes, at 4.

The court concluded that Stokes' position had been rejected by this Court in Medicine Horse, citing our holding that Medicine Horse was an "at will" employee without a property interest because his employment was without a specified term. The court also cited our conclusion that "neither [the Wrongful Discharge from Employment Act] nor any other action by the Montana Legislature or [the Montana Supreme] Court has nullified the 'at-will' designation or section 39-2-503." Stokes, at 4-5. The federal district judge concluded that the Montana Supreme Court made it clear that an "at will" employee in the State of Montana had no property interest in her position of employment. Citing our Scott decision, the court reiterated the caveat that although "Montana has implemented protective devices through both the Legislature and case law that operate to curb the harsh effects of the rule, . . . these devices . . . do not obliterate the at-will rule." Stokes, at 6. The court concluded that because the WDFEA did not nullify the at will doctrine, Stokes was an "at will" employee; that she had no property interest in her continued employment; that she, therefore,

17

was not due the protection afforded by § 1983; and that, accordingly, her complaint failed to state a claim upon which relief could be granted.

The State and Boreen take opposite positions on whether the court correctly applied our holding in Medicine Horse to the factual situation presented in Stokes. In any event, Stokes is not authority for deciding the issue raised in this case. Like Medicine Horse, Stokes did not point to any administrative regulation under which she could only be discharged for just cause. That issue was not even raised in Stokes, much less decided.

Moreover, while we stated in Medicine Horse, that the WDFEA had not nullified the at will statute, we did not address in that case, nor do we here, the question of whether the "good cause" provision of the WDFEA, in and of itself, creates a property interest in continued employment. Our focus in Medicine Horse was on the government policy at issue and on the employee's failure to point to a contract or state law or regulation creating a property interest in his employment.

Finally, we consider a recent case decided by the Ninth Circuit which did deal with the issue presented by Boreen. Hollister involved an appeal from the federal district court's dismissal of a § 1983 claim brought by a legal secretary for the Rosebud County Attorney. Hollister worked as Rosebud County Attorney's legal secretary for ten years when she was informed on November 30, 1990, that she would be terminated effective January 4, 1991. No reasons were given for the termination. The Board of

18

County Commissioners held a grievance hearing without the presence of Hollister, but refused to reinstate her.

Hollister brought a civil rights action in federal district court alleging that she had been deprived of a property right, her public employment, without due process, as well as other claims including a breach of the covenant of good faith and fair dealing and wrongful discharge under §§ 39-2-901, MCA, et. seq. The district court granted summary judgment in favor of the defendant county attorney, concluding that under Montana law, Hollister had no property interest in her employment and therefore, there could be no violation of the Fourteenth Amendment. The court also declined to retain supplemental jurisdiction over the state claims.

Hollister appealed to the court of appeals, maintaining that she was discharged without due process in violation of her Fourteenth Amendment rights, arguing that the Rosebud County Personnel Policy provided her with legal entitlement to continued employment because of the "just cause" provision, the requirement that she receive a post-termination hearing upon request if discharged and the requirement that she participate in the retirement program. Hollister, 22 F.3d at 951.

The circuit court stated that in Montana, the at will employment statute governed the creation of a property interest in continued employment. The court cited this Court's interpretation of the statute, stating that "absent a specified term of employment, contained in a rule, regulation, state law, or understanding between employer and employee, an employee in Montana

is an employee at will and has no property interest in his job." Hollister, 22 F.3d at 952. (Citation omitted.) The court concluded that in the instant case, Hollister could point to no policy that specified a term of employment, nor was there a statute or written contract specifying a term of employment; therefore, she was an at will employee.

Citing Scott and Medicine Horse, the court further stated:

> The Montana Supreme Court's treatment of Mont. Code Ann. § 39-2-503 in light of the subsequently enacted Wrongful Discharge From Employment Act,...is consistent with this conclusion. The Act provides, inter alia, that an at-will employee who is discharged without "good cause," is entitled to certain remedies, including lost wages and benefits up to a specified limit. Nonetheless, the Act does not abrogate the provisions of the at-will employment statute, and does not create in at-will employees a property interest in their jobs.

Hollister, 22 F.3d at 953.

The court concluded that this rationale applied with equal force to the Rosebud County Personnel Policy provisions relied upon by Hollister. "`[F]or cause' and similar provisions in employment contracts, handbooks, or statutes, that fall short of an explicit agreement as to a term of employment do not give an employee a property interest in her job." Hollister, 22 F.3d at 953, citing Reiter, 627 P.2d at 849. Under Montana law, the court continued, neither a "just cause" hearing nor mandatory retirement plan provisions in the personnel policy can be read as implying a specified term of employment. "The provisions of the County Personnel Policy, taken individually or together, do not amount to an 'expression . . . concerning the length of employment.'" Hollister, 22 F.3d at 953.

20

Without belaboring its reasoning, we simply do not agree with the court's application of our prior case law to the facts in Hollister. Simply put, we have not heretofore addressed the issue raised in Hollister, which issue is now raised in the instant case--i.e., a public employee who can point to a specific administrative regulation or government policy that conditions disciplinary action upon "just cause." Notwithstanding the federal court's interpretations of Reiter and Medicine Horse, we clearly suggested, in the latter case, a contrary interpretation under the appropriate facts. "Medicine Horse presented no . . . regulation specifically stating or otherwise indicating that he had a property interest in his position . . . The written policy . . . [allowing for termination at any time and a discretionary hearing] . . . does not support the appellant's claim of a property interest in his position." Medicine Horse, 823 P.2d at 233.

By way of summary, in Reiter we rejected a claim that length of employment, being a supervisor and receiving job-related financial benefits would give rise to a property interest in employment. Reiter, 627 P.2d at 849. In Medicine Horse the employee did not base his claim on a "just cause" regulation, but on an ambivalent school district policy and on his length of tenure. The two cited federal court decisions to the contrary notwithstanding, a close reading of our prior cases clarifies that we have not heretofore decided the issue presented in the instant case; we have never held that an at will employment relationship cannot be altered by the employer conditioning the employee's

21

termination on a finding that there is "just cause" or, as the State defines that term in the regulations at issue here, "reasonable, job-related grounds for taking a disciplinary action based on failure to satisfactorily perform job duties or disruption of agency operations." § 2.21.6507(6), ARM.

Finally, given the concerns expressed by amici, Montana League of Cities and Towns and Montana Association of Counties, to the effect that our decision here will have "significant impact upon local government operations" and will "substantially redefine the nature of the employment relationship between public entity employers and their at will public employees," it is, perhaps, appropriate to emphasize the obvious.

First, our decision in this case pertains only to those employees who, like Boreen, can point to some written contract, state law, or regulation which states or otherwise provides a specified term of employment and, hence, a property interest in continued employment.

Second, nothing in this decision provides a public employee protected by the type of regulations or policies at issue here with life-time job tenure and immunity from discharge. Our decision here confers upon a public employee like Boreen nothing more than what the regulations applicable to the employment at issue already provide.

Third, we have determined that regulations such at those at issue here create a property right to continued employment, absent the employer's demonstration of just cause. As a consequence,

22

Loudermill mandates that due process requires notice to the employee with an explanation of the employer's evidence and the opportunity for the employee to respond in "something less" than a full evidentiary hearing before termination. Loudermill, 470 U.S. at 545-46. Such requirements, the purpose of which are merely to guard against a mistaken decision, do not impose an intolerable administrative burden upon the government when balanced against the catastrophic consequences to the employee of losing his or her job and very means of support. Loudermill, 470 U.S. at 543-45.

On the basis of the foregoing discussion, we hold that Boreen's complaint did state a claim upon which relief could be granted, and, accordingly, we reverse and remand this case to the District Court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

_____ Justice

We Concur:

_____
_____
_____
_____
Justices

23

APPENDIX A

2.21.6506 POLICY AND OBJECTIVES (1) It is the policy of the state of Montana that:
(a) state employees who fail to perform their jobs in a satisfactory matter or whose behavior otherwise interferes with or disrupts agency operations be subject to disciplinary action, up to and including discharge;
(b) disciplinary action be administered for just cause, as defined in this policy; and
(c) an employee be informed of the cause for disciplinary action and offered the opportunity to respond. (Administrative Rules of Montana 6/30/84 2-1493 (page)

2.21.6507 DEFINITIONS

. . .

(6) "Just cause" means reasonable, job-related grounds for taking a disciplinary action based on failure to satisfactorily perform job duties or disruption of agency operations. Just cause includes, but is not limited to, an actual violation of an established agency standard, legitimate order, policy, or labor agreement, failure to meet applicable professional standard or a series of lesser violations, if the employee would reasonably be expected to have knowledge that the action or omission may result in a disciplinary action.

(7) "Due process" means ensuring an employee:
(a) is informed of the action being taken and the reason for it; and
(b) has an opportunity to respond to and question the action and to defend or explain the questioned behavior or actions.

. . .

(11) "Discharge" means, for purposes of this policy, the termination of an employee's employment for just cause.

2.21.6509 FORMAL DISCIPLINARY ACTIONS (1) When formal disciplinary action is necessary, just cause, due process and documentation of facts are required. Formal disciplinary actions include, but are not limited to, written warning, suspension without pay, disciplinary demotion and discharge.

(2) Management shall, when appropriate, use progressive discipline. However, the appropriateness of using progressive discipline in each case lies within the discretion of management. The specific disciplinary

24

actions taken and the order in which disciplinary actions are taken depends on the nature and severity of the performance deficiency or behavior that disrupts agency operations. Discharge should not be an initial disciplinary action expect in severe cases of unsatisfactory performance or behavior that disrupts agency operations.

(3) Each formal disciplinary action shall include a written notification to the employee which includes, but is not limited to, the following:
(a) the just cause for the disciplinary action;
(b) the disciplinary action to be taken, including dates and duration where applicable;
(c) the improvements or corrections expected, and the consequences of failure to make the required improvement or correction, if applicable.

(4) The employee shall be offered the opportunity to review, sign, and date any notice of a formal disciplinary action and shall have the opportunity for verbal and/or written response. The employee's signature indicates that the employee has had the opportunity for review, but not necessarily that the employee agrees with the action. If the employee refuses to sign, a witness to such refusal, in addition to the supervisor, shall sign and date the notice.

(5) Where notices cannot be issued in person, they should be delivered by certified mail.

(6) All formal disciplinary actions must be documented. Documents will be maintained in accordance with the employee record keeping policy, ARM 2.21.6601 et. seq.

2.21.6522  CLOSING (1) This policy shall be followed unless it conflicts with negotiated labor contracts or specific statutes, which shall take precedence to the extent applicable.

October 20, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Peter Michael Meloy, Esq.
THE MELOY LAW FIRM
P. O. Box 1241
Helena, MT 59624

Hon. Joseph P. Mazurek, Attorney General
James Scheier, Assistant
Justice Building
Helena, MT 59620-1402

Stanley T. Kaleczyc
Browning, Kaleczyc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy