No. 96-651

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

ANTHEL L. BROWN,

     Plaintiff and Appellant,

v.

STATE OF MONTANA, RICK DAY, Director of
Department of Corrections and Human Services,
MIKE MAHONEY, Warden of Montana State Prison,
JANET COX, Records Department Supervisor, Montana
Department of Corrections and Human Services,
Montana State Prison,

     Defendants and Respondents.

FILED

APR 15 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Anthel L. Brown, Pro Se, Spur Texas

     For Respondents:

          Diana P. Leibinger-Koch, David L. Ohler, Lois Adams, Attorneys at
Law, Department of Corrections, Helena, Montana

Submitted on Briefs: March 6, 1997

Decided: April 15, 1997

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant Anthel L. Brown appeals from the September 16, 1996 Memorandum and Order of the First Judicial District Court, Lewis and Clark County, dismissing his complaint for injunctive and declaratory relief and damages for injuries arising out of respondents' failure to correctly calculate his good time. We reverse and remand.

We consider the following issue on appeal:

Did the District Court err in dismissing Brown's complaint on the basis of collateral estoppel?

<u>Factual and Procedural Background</u>

In 1976, Brown was charged, convicted and sentenced on his plea of guilty to five separate felonies. Brown was sentenced to serve ten years for theft, one-hundred years for deliberate homicide, twenty years for sexual intercourse without consent, forty years for robbery and twenty years for aggravated assault. The court ordered that, for purposes of parole, the sentences were separate, and that Brown would serve them consecutively. In 1982, Brown was sentenced to an additional four years for the offense of escape to run consecutively to the 1976 sentences.

2

In 1993, Brown filed a petition for writ of habeas corpus with this Court in which he alleged that the Montana State Prison had miscalculated his parole eligibility date. Brown v. McCormick, No. 93-263 (Mont. June 29, 1993) (order denying petition for writ of habeas corpus) (hereinafter referred to as 1993 Writ). Brown claimed that prison officials had miscalculated his good time credits and that the Montana parole statute violated his equal protection and due process rights under the United States Constitution by requiring him to serve a specified length of time without application of good time before being parole eligible. We denied Brown's petition holding that Brown had misinterpreted the parole statute and that the statute did not deny him equal protection.

On May 1, 1996, Brown filed a complaint in the First Judicial District pursuant to U.S.C. §§ 1983, 1985, and 1988, seeking to redress alleged deprivations of his rights by prison officials. Brown alleged that: (1) through their failure to adequately train and supervise personnel in awarding good time credits for work performed, the named prison officials violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by miscalculating his prison sentence; (2) defendants negligently caused him severe emotional distress and mental anguish by failing to correctly calculate his parole eligibility date; (3) defendants mistreated him; (4) defendants acted with deliberate indifference, malice, and oppression in failing to correctly calculate his parole eligibility date. Brown sought an unspecified amount of compensatory and exemplary

3

damages, as well as injunctive, prospective, and declaratory relief requiring defendants to correctly calculate his sentence and parole eligibility date.

Subsequently, defendants filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), M.R.Civ.P., or in the alternative, a motion for summary judgment, arguing in part, that Brown's action was barred by the doctrine of collateral estoppel due to this Court's ruling in the 1993 Writ. On September 16, 1996, the District Court granted defendants' motion to dismiss on the basis of collateral estoppel. Brown appeals that decision.

### Standard of Review

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762 (Boreen I). The District Court's determination that Brown's complaint failed to state a claim is a conclusion of law. Our standard of review of the district court's conclusions of law is whether the court's interpretation of the law is correct. Boreen I, 884 P.2d at 762; Boreen v. Christensen (Mont. 1996), 930 P.2d 67, 53 St.Rep. 1450.

4

Did the District Court err in dismissing Brown's complaint on the basis of collateral estoppel?

Brown's claims are based on the prison officials' alleged failure to correctly calculate and apply Brown's earned good time, thus depriving him of his accurate parole eligibility date. The District Court dismissed these claims based on collateral estoppel in that Brown had raised, and this Court had dismissed, the identical claims in the 1993 Writ.

This Court has defined the doctrine of collateral estoppel as follows:

> "Collateral estoppel" . . . may be considered as a branch of the doctrine of res judicata but is distinguishable from the bar to litigation normally called res judicata. The distinction is that res judicata bars the same parties from relitigating the same cause of action while collateral estoppel bars the same parties from relitigating issues which were decided with respect to a different cause of action. [Citation omitted.] The bar that arises from collateral estoppel extends to all questions essential to the judgment and actually determined by a prior valid judgment. [Citation omitted.]

Boyd v. First Interstate Bank (1992), 253 Mont. 214, 218, 833 P.2d 149, 151 (citing Gessell v. Jones (1967), 149 Mont. 418, 421, 427 P.2d 295, 296). In addition, collateral estoppel has been defined as preventing litigation of an issue which has already been litigated and which was necessary to the outcome of the prior suit. Boyd, 833 P.2d at 151. The Court in Boyd identified three elements of the collateral estoppel test:

1. The identical issue raised has been previously decided in a prior adjudication;
2. A final judgment on the merits was issued in the prior adjudication; and
3. The party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication.

Boyd, 833 P.2d at 151.

The State claims that the District Court correctly dismissed Brown's complaint on the basis of collateral estoppel because the issues raised in Brown's complaint, although "cloaked in the language of a personal injury or tort action" are, in essence, the same issues as previously litigated in the 1993 Writ. In order to determine whether the issues raised in Brown's complaint are identical to the issues raised in the 1993 Writ, and are, therefore, barred on the basis of collateral estoppel, we must identify the issues decided in the 1993 Writ.

The thrust of Brown's 1993 habeas petition was that prison officials had miscalculated his parole eligibility date by failing to consider an administrative rule, by applying an unconstitutional parole statute and through miscalculation and misapplication of his earned good time credits. Brown argued that § 20.25.304, ARM, applied to his sentences to make them run concurrently for parole eligibility purposes. Section 20.25.304(1), ARM, provides that: "[i]f the inmate is received with two or more sentences running consecutively, the sentences will be added together for parole eligibility purposes, unless the court directs otherwise." We held that § 20.25.304, ARM, did not affect Brown's sentences because his sentence and judgment specifically provided that his sentences be considered as separate terms for parole eligibility purposes.

The parole eligibility statute applicable to Brown, § 95-3214(1)(a), RCM (1947), (en. 1955 Sec. 94-9832; redes. 1973 Sec. 95-3214), provided that:

6

[n]o convict serving a time sentence shall be paroled until he has served at least one-quarter (¼) of his full term, less good time allowances off, as provided in section 80-1905; . . . . A first [time] offender serving a time sentence may be paroled after he has served, upon his term of sentence, twelve and one-half (12 ½) years.

We held that the statute required a first time offender to serve either one-quarter of a given sentence less good time, or 12½ years, whichever was shorter. Applying the statute to Brown, we held that he would serve one-quarter of all the sentences, except deliberate homicide, or one-quarter of 94 years, plus 12½ years flat on the deliberate homicide sentence, since 12½ years was shorter than one-quarter of his sentence on that charge (25 years), before he was parole eligible.

Finally, we held that § 95-3214, RCM (1947), did not violate equal protection by requiring an inmate to serve 12½ years flat on a given sentence without the application of good time. We held that requiring long term inmates to serve time without application of good time did not violate equal protection because all long term inmates were treated the same. Furthermore, distinctions between long term inmates and short term inmates did not violate equal protection because, as we stated in the 1993 Writ, "[d]istinctions in the treatment of inmates [do] not violate the Equal Protection Clause if the differences in treatment are rational." Since there was a rational reason to require persons committing serious crimes to serve longer sentences than persons committing less serious crimes, we denied Brown's due process claim. Resolution of the above issues did not require us to calculate or apply Brown's earned good time credit. We merely interpreted § 20.25.304,

7

ARM, and § 95-3214, RCM (1947), as they affected Brown's sentences and parole eligibility date before crediting Brown with any earned good time. In the 1993 Writ we stated:

> Petitioner submits various calculations regarding good time that he contends he has earned. Respondents, however, do not necessarily agree with those calculations, arguing instead that Petitioner has misinterpreted the statute, is not entitled to the relief requested, and that, therefore, the amount of good time earned is not at issue. We agree.

It is apparent from this statement and from the resolution of the issues that we did not calculate Brown's earned good time credit in our 1993 decision.

The District Court characterized the 1993 Writ in the following manner:

> Those issues regarded whether the Department of Corrections had properly calculated Brown's parole eligibility date when considering his good time credits and whether his due process and equal protection rights were violated. The court found that all of Plaintiff's claims were without merit and denied his petition for writ of habeas corpus. The issues presented here are exactly the same.

If the District Court's allusion to "his good time credits" was intended as a reference to Brown's earned good time credits, rather than a reference to the good time credit available to any first time offender pursuant to § 95-3214, RCM (1947), then it was a mischaracterization of the issues in the 1993 Writ. As stated above, we did not consider Brown's *earned* good time credit in the 1993 Writ.

We must next examine Brown's complaint to see if his claims are the same as those litigated in the 1993 Writ and are therefore barred by the doctrine of collateral estoppel. Certain allegations in Brown's complaint involve the same issues we decided in the 1993 Writ and were therefore properly dismissed on the basis of collateral estoppel. For example,

8

Paragraph 27 of the complaint challenges the imposition of a flat 12½ years on the deliberate homicide sentence. This issue was clearly decided in the 1993 Writ. On the other hand, several issues raised in the complaint were not necessarily decided in the 1993 Writ.

Brown claims in Paragraphs 21-23 of his complaint that he was "awarded" certain good time credits in Crazy Boy, et al. v. Gamble, No. DV-94-33, (Mont. March 2, 1995) for job assignments performed from 1982 through 1992 and that prison officials failed to recalculate his parole eligibility date to reflect this award.

Brown claims in Paragraph 24 that in 1994, Warden Mahoney issued a revision to Inmate Policy # 505 which created an ex post facto violation as applied to him because it granted three days good time per month for self improvement activities in lieu of the five days granted by the policy in effect at the time Brown was sentenced.

Brown claims in Paragraph 25 of the complaint that prison officials testified during a 1995 deposition in the case of Brown v. Day, No. CV-93-46-H-LBE, (D. Mont. October 27, 1995) that Brown's eligibility date was April 17, 1993 and that prison officials' calculations since that deposition had not reflected this statement.

Without commenting on the merit of any of these claims we note that none of the claims was discussed or resolved in the 1993 Writ. The court cases which Brown claims should have given rise to recalculation of his good time credits were not decided until after our decision in the 1993 Writ. Although the facts constituting the claim in Paragraphs 21-23 existed prior to the 1993 Writ, and the issue could have been decided at that time, it was not.

9

"The amount of good time earned is not at issue." 1993 Writ. Furthermore, Brown's claim in Paragraph 24, based upon the 1994 revision to the inmate policy, clearly could not have been decided in the 1993 Writ as the new policy had not yet been issued.

Because these issues were not previously decided, nor were they necessary to the outcome of our decision in the 1993 Writ, they are not barred by collateral estoppel. Therefore, the District Court's conclusion of law that the following claims are barred by collateral estoppel is incorrect: (1) prison officials' alleged failure to apply good time awarded in Crazy Boy, et al. v. Gamble; (2) prison officials' alleged failure to recalculate Brown's good time in light of statements made by them pertaining to Brown's eligibility date in Brown v. Day, and; (3) application of the new inmate policy to Brown constitutes an ex post facto application of the law. We reverse the District Court's order dismissing these claims on the basis of collateral estoppel and remand for further proceedings.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

April 16, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Anthel L. Brown
Dickens County Correctional Center
Route 1, Box 222
Spur, TX  79370

David L. Ohler, Legal Counsel
Dept. of Corrections
1539-11the Ave.
Helena, MT  59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy