No. 83-542

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JACQUELINE DARE,

            Plaintiff and Appellant,

  -vs-

MONTANA PETROLEUM MARKETING CO.,

            Defendant and Respondent.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nye and Meyer, Billings, Montana

    For Respondent:

        Herndon, Harper and Munro, Billings, Montana

---

Submitted on Briefs:  March 15, 1984

Decided:  September 10, 1984

Filed: SEP 10 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Jacqueline Dare appeals from summary judgment granted by the Thirteenth Judicial District Court, Yellowstone County, in favor of Montana Petroleum Marketing Company on her claims for relief arising from termination of her employment. We reverse.

The sole issue on appeal is whether the District Court erred in granting summary judgment to defendant employer.

Jacqueline Dare worked as a cashier and station attendant at defendant's Husky service station in Billings from July 14, 1982 to January 23, 1983. She was hired by oral agreement by manager Dick Bertrand, who was also her supervisor.

Employee responsibilities were specified in instructions the company furnished to station managers. These instructions began with the admonition:

"Managers: Following are some items that must be covered and understood by all new employees during their training period."

The parties dispute whether manager Dick Bertrand reviewed these instructions with Dare or whether she in fact knew of the policies listed in these instructions. The instructions defined employee duties, conduct and appearance. They did not include any disciplinary or termination procedures. The instructions contained a paragraph stating:

"We draw from our existing employees to fill most of our open manager positions. An employee who continually requires little or no supervision and shows some personal initiative in wanting to learn the ins/outs and do/don'ts of the petroleum retailing field will most likely have a station of his own in the not too distant future."

Dare began working for defendant in July at $3.35 per hour. Her pay was raised to $3.65 per hour in October and she received health insurance benefits. She stated in her deposition that she was promised another raise in three

2

months, but never received it. She also said Bertrand told her he wanted her to learn to do the station's bookkeeping.

Dare stated in her deposition that on January 22, 1983 she fell in her front yard when coming home from work. She went to the hospital and was given a neck brace to wear. As a result of the fall, she was ill before she went to work on Sunday, January 23, 1983. Dare called a co-worker to ask if she would work in Dare's place, but she could not. Dare went to work at 2 p.m. and worked until around 5 p.m., when she called Bertrand and told him she wasn't sure she could complete her shift. Bertrand told her to try. She took some pain pills and threw up in the garbage can. A customer called Bertrand to inform him of Dare's condition. Bertrand called Dare back and told her, "I am coming in to work for you, and when I get there you're fired."

Dare and Bertrand give contradictory versions of why Dare was fired.

Bertrand claimed Dare refused to clean designated areas despite verbal warnings on two occasions. He claimed he had warned her about having men hang around the station while she worked, but that on numerous occasions he had entered the station and found men and women standing at the counter eating hamburgers and french fries while Dare was trying to wait on customers. Bertrand claimed Dare closed the station 5 minutes early on one occasion and that he told her closing early was grounds for immediate dismissal. He claimed that even though she promised it would not happen again, he later twice witnessed her closing early. Bertrand states that on December 3, 1982 he placed Dare on probation for 30 days, telling her she would be dismissed if her work performance did not improve. He stated that her "constant" calls complaining of being too sick to work, coming in late and lack of responsibility were "getting to be too much."

3

Dare stated in deposition that although Bertrand had warned her and all station employees about cleaning duties, she never refused to clean anything. She stated that one warning resulted from her failure fully to clean up the men's restroom after the toilet overflowed. She stated that management had not provided gloves or other equipment for cleanup and that she "did not want to touch it." She stated she was never warned about friends hanging around the station because there were no friends hanging around the station. She said Bertrand warned all employees against allowing men to hang around.

Dare admitted closing 5 minutes early on Christmas Eve after no customers came in for 2 1/2 hours. She claimed Bertrand did not tell her closing early was grounds for dismissal, but simply told her not to let the owner catch her or she would be "in trouble." She denied closing early on any occasion other than Christmas Eve. Moreover, she stated she missed work for illness only once during her 6 months of employment. Finally, she stated she was never told she was being placed "on probation," although she admitted Bertrand had told her that unless her work performance improved she would be terminated. However, she states that she was later told on several occasions that she was doing an excellent job.

Dare filed suit claiming she had been wrongfully discharged for becoming too ill to work, even though she had no prior history of illness. She also claimed her employer breached the covenant of good faith and fair dealing implied in the employment relationship. She demanded reinstatement, lost earnings, damages for mental, emotional and financial distress, punitive damages and costs.

Defendant moved for summary judgment alleging there was no genuine issue as to any material fact and that defendant

4

was entitled to judgment as a matter of law. The motion was briefed and the parties stipulated to submission on briefs without oral argument.

Dare argued that Gates v. Life of Montana Insurance Company (Mont. 1982), 638 P.2d 1063, 39 St.Rep. 16, "modified" section 39-2-503, MCA. That section states:

> "An employment having no specified term may be terminated at the will of either party on notice to the other . . .."

Dare argued that under Gates and Nye v. Department of Livestock (Mont. 1982), 639 P.2d 498, 39 St.Rep. 49, the employer cannot as a matter of law rely upon the concept of at will employment to justify indiscriminate termination of employment. She contended that the duty of good faith and fair dealing and the tort of wrongful discharge override the at will employment concept. She contended that summary judgment was improper because there were genuine issues of material fact as to whether her employer breached these duties or violated public policy in her termination.

The District Court granted summary judgment to defendant. The court reasoned that the plaintiff had failed to show any public policy violation, as required to sustain an action for wrongful discharge, because no rules or regulations were ignored or misapplied here as was the case in Nye. Further, the court reasoned that no covenant of good faith and fair dealing could be implied in Dare's employment relationship because there was no employment handbook covering employee discharge as in Gates. Finally, the court granted summary judgment on Dare's claim for emotional, mental and financial distress because the court had granted summary judgment on Dare's underlying claims and because the court concluded plaintiff had presented no evidence supporting the claim. Dare appeals from the summary judgment granted by the District Court.

5

The rules regarding summary judgment are well settled. The purpose of summary judgment is to encourage judicial economy by eliminating unnecessary trials. Summary judgment will be upheld in cases where the complaining party fails to demonstrate the existence of material and substantial facts that would alter the decision made below. However, summary judgment is not a substitute for trial where a factual controversy exists. The appellate standard for review of a grant or denial of a summary judgment motion is the same as that used by the trial court initially under Rule 56(c), M.R.Civ.P.: a summary judgment is properly granted when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If there is any doubt as to the propriety of a motion for summary judgment, it should be denied. Reagan v. Union Oil Co. (Mont. 1984), 675 P.2d 953, 956, 41 St.Rep. 131, 134. Here, we find genuine issues of material fact which require reversal of the summary judgment granted by the District Court.

Dare alleges that she was wrongfully discharged by defendant. This Court addressed the tort of wrongful discharge in Nye v. Department of Livestock (Mont. 1982), 639 P.2d 498, 39 St.Rep. 49. In Nye, we stated:

> " . . . [T]he tort of wrongful discharge may apply to an at will employment situation. In fact, the theory of wrongful discharge has developed in response to the harshness of the application of the at will doctrine, under which an employment may be terminated without cause . . .. The determination of whether the cause of action arises rests upon whether an unfair or unjustified termination was in violation of public policy. Keneally v. Orgain (1980), Mont., 606 P.2d 127, 37 St.Rep. 154." Nye, 639 P.2d at 502, 39 St.Rep. at 53.

In Nye, we found that administrative rules may be the source of a public policy which would support a claim of wrongful discharge. We held that the Department of Livestock had violated public policy by failing to apply to plaintiff, a

6

department employee, its own regulations regarding employee discipline and termination. Nye, 639 P.2d at 502, 39 St.Rep. at 53-54.

However, in Keneally v. Orgain (1980), 186 Mont. 1, 606 P.2d 127, we found that the plaintiff-employee had failed to show a violation of public policy necessary to support a wrongful discharge action. Plaintiff alleged that he had been unjustly terminated by his employer for complaining that the company sold its business machines based upon promises of adequate maintenance and service, but then failed to provide the promised maintenance and service. This Court emphasized the employer's legitimate interest in protecting its normal operational procedures from disruption. Keneally, 186 Mont. at 6, 606 P.2d at 129-30, citing Geary v. United States Steel Corp. (Pa. 1974), 319 A.2d 174, 178-79.

Dare alleges facts tending to show that her firing was unjustified and contends that she was fired because she was too ill to work, even though she had no history of missing work due to illness. In granting defendant's summary judgment motion on Dare's wrongful discharge claim, the District Court stated that no administrative rules had been ignored or misapplied to Dare, as they had been in Nye. However, it is not essential that Dare rely upon or establish precisely the same facts and theory set forth in Nye. Public policy violations may conceivably arise on other facts or theories.

The record discloses remaining genuine issues of material fact regarding Dare's wrongful discharge claim. The parties relate widely divergent versions of Dare's work performance and reasons for her termination. It therefore remains for the trier of fact to resolve these issues, including the reason for Dare's termination and whether she was fired for cause. Further, Dare is entitled to an

7

opportunity to present authorities in support of her public policy arguments as supported by the facts developed at trial.

Dare also contends that her employer breached the covenant of good faith and fair dealing implied in the at will employment relationship. The District Court ruled that this covenant could not be implied in this case because there was no employment handbook promulgated by the employer, as in Gates. The court found this to be a critical distinction and ruled that without such a handbook, Dare's claim must fail. We conclude that the District Court construed Gates too narrowly.

Whether a covenant of good faith and fair dealing is implied in a particular case depends upon objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly. Gates, 638 P.2d at 1067, 39 St.Rep. at 20. The presence of such facts indicates that the term of employment has gone beyond the indefinite period contemplated in the at will employment statute, section 39-2-503, MCA, and is founded upon some more secure and objective basis. In such cases, the implied covenant protects the investment of the employee who in good faith accepts and maintains employment reasonably believing their job is secure so long as they perform their duties satisfactorily. Such an employee is protected from bad faith or unfair treatment by the employer to which the employee may be subject due to the inherent inequality of bargaining power present in many employment relationships. The implied covenant seeks to strike a balance between the interests of the employer in controlling the work force and the interests of the employee in job security. Gates, 638 P.2d at 1066-67, 39 St.Rep. at 20.

8

We hold that an employment handbook as promulgated by the employer in _Gates_ is not essential to a cause of action for breach of the implied covenant of good faith and fair dealing. Implication of the covenant depends upon existence of objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly.

Contrary to the employer's contentions, there are remaining genuine issues of fact material to Dare's claim for breach of the implied covenant of good faith and fair dealing. Dare has alleged that she was given a pay raise after 3 months and promised another pay raise in an additional 3 months. She has also alleged that Bertrand told her he wanted her to learn to do the station's bookkeeping. Dare claims that she was told she was doing a good job and was not, as Bertrand contends, placed on probation. She contends that her employer had a written policy that existing employees who demonstrated independence and initiative were most likely to become station managers for the company. The employer denies that Dare had any basis to believe she had job security.

The existence of this issue of material fact precludes summary judgment. Further, if the covenant is implied in this case, there remain material fact issues regarding whether Dare's employer breached the covenant in the context of this case.

Finally, Dare contends that the District Court erred in granting defendant's motion for summary judgment as to her claim for emotional, mental and financial distress. We agree. It appears the court granted summary judgment on this claim because it granted summary judgment on Dare's underlying claims for relief. In light of our reversal of summary judgment on Dare's wrongful discharge and implied

covenant of good faith and fair dealing claims, summary judgment on this claim must also be reversed. Dare is entitled to present evidence at trial of the alleged damages resulting from wrongful discharge or breach of the implied covenant, including evidence of emotional, mental or financial distress.

The summary judgment granted by the District Court is reversed and the cause is remanded for trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice L. C. Gulbrandson specially concurring.

I concur in the result but not in all that is said in the majority opinion.

_____
Justice

Mr. Justice Frank B. Morrison, Jr. specially concurs as follows:

I applaud the majority's effort to define the parameters of those principles that control the employment relationship. I concur in the result but not in all that is said in the majority opinion.

First, it should be made clear that this Court has not modified the "at will" statute. Courts cannot amend statutes. At times it seems as though judicial opinions ignore applicable statutes. That is not the case here.

In my opinion, section 39-2-503, MCA provides for "at will" employment where no specific term is specified. The statute refers to the term of employment but has nothing to do with obligations owed by either party to the other. In other words, even though employment may be terminated at will, if a legal obligation is breached, that breach may give rise to a separate tort action.

The majority refers to the District Court holding that a public policy violation is required in order to sustain a wrongful discharge action. Following our decisions in Gates v. Life of Montana Insurance Co. (1982), 196 Mont. 178, 638 P.2d 1063 and Gates v. Life of Montana Insurance Co. (Mont. 1983), 668 P.2d 213, 40 St.Rep. 1287 the law had broader application. We there held that there is an implied covenant of good faith and fair dealing, the breach of which gives rise to an action in tort. The old wrongful discharge action premised upon a public policy violation was subsumed in this new tort recognized for the first time in the second Gates appeal. All public policy violations would undoubtedly involve a breach of covenant of good faith and fair dealing. The obligation owed under that covenant is broader and encompasses more employer-related conduct.

11

The majority states that:

"Whether a covenant of good faith and fair dealing is implied in a particular case depends upon objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly."

I disagree. The covenant of good faith and fair dealing is implicit in every employment contract irrespective of a reasonable belief regarding job security. The law imposes an absolute obligation upon employers to deal fairly and in good faith with their employees from the commencement of the employment relationship. Facts that give rise to an inference of job security in the future might help determine whether there was a breach of the covenant to deal fairly and in good faith, but are not necessary to the existence of the covenant itself.

There seems to be much confusion surrounding "at will" employment and under what circumstances employees thus situated can be terminated. For clarification, and since this is a specially concurring opinion entitling me to take some license, I volunteer my thoughts on this subject. All contracts of employment without a specified term are "at will." Section 39-2-503, MCA. This statute, which becomes part of every contract, is subject to the higher authority of the Montana State Constitution. Art. II, Sec. 3, 1972 Mont. Const., provides that all persons have as an inalienable right the opportunity of pursuing life's basic necessities. Art. II, §4, 1972 Mont. Const., provides that no person shall discriminate against any person exercising his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas. Clearly the "at will" statute is subject to this higher constitutional authority and as such exists subservient to it. Although this case does not involve conduct proscribed

by the Constitution, I do want to note that the right to terminate is not absolute but subject to exercise in accordance with constitutional principles.

This Court has held that employment contracts are subject to an implied covenant of good faith and fair dealing. This obligation is not rooted in statute and cannot repeal or amend the provisions of section 39-2-503, MCA. Rather, the obligation recognized by this Court must be reconciled with the "at will" statute. I think this can easily be done. An employer, under the "at will" statute, has the right to terminate. However, if the employer violates the legal obligation to treat the employee fairly and in good faith, then a separate and independent tort action can be instituted by the injured employee against the offending employer. Damages, not reinstatement, is the remedy.

We are treading on thin ice as we attempt to construct new protections for employees. There is an indication in the majority opinion that the plaintiff can only be terminated "for cause." Such a determination certainly conflicts with the "at will" statute. We must not confuse the "term of employment" with the right of the employee to be dealt with fairly and in good faith. The breach of the obligation owed by the employer may give rise to a tort action on the part of the employee, but does not convert "at will" employment to employment for a specific term.

I concur in reversing and remanding for trial, but do not envy the trial court the task of developing instructions from what we have said.

Justice

13