JUSTICE TRIEWEILER,
dissenting.
I dissent from the majority opinion.
Scott Medicine Horse testified that he was not at work on December 20, 1988, and was not notified of the school board meeting at which his termination was to be discussed. It is undisputed that the agenda for that meeting did not include notice to Medicine Horse or anyone else that his termination would be a subject of discussion. Even after the meeting and his termination, he was not given reasons for his termination or an opportunity to respond to those specific reasons at the subsequent meeting at which he appeared. Neither the County Superintendent, the State Superintendent, nor the District Court resolved the factual dispute regarding notice because all arrived at a legal conclusion that Medicine Horse was an employee “at will” and was not entitled to due process prior to his termination.
*73 This Court concludes that because the school district had a written regulation providing for its employees’ termination at any time that Medicine Horse had no property interest in his employment. However, if the determination of who does and who does not have a property interest in employment is going to be left to employers, then the due process requirement of the Fourteenth Amendment to the United States Constitution is meaningless.
I find it incredible that through the cumbersome intellectual process known as legal analysis courts have concluded that a person receiving welfare benefits has a “property interest” in the continued receipt of those benefits that is safeguarded by procedural due process. See Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287. However, this man had no “property interest” in the government job he had performed for four and one-half years and which was his sole means of providing food, clothing, and housing for himself and his family.
I agree with the dissent of Justice Marshall in Board of Regents v. Roth, 408 U.S. 564, 589, when he states that:
“Employment is one of the greatest, if not the greatest, benefits that governments offer in modern-day life. When something as valuable as the opportunity to work is at stake, the government may not reward some citizens and not others without demonstrating that its actions are fair and equitable. And it is procedural due process that is our fundamental guarantee of fairness, our protection against arbitrary, capricious, and unreasonable government action.”
Justice Douglas has written that:
“It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.” Joint Anti-Fascist Refugee Committee v. McGrath, supra, at 179 (concurring opinion).
However, it is not necessary to rely on Justice Marshall’s dissent in Roth, to conclude that Medicine Horse had a “property interest” in his employment. In Perry v. Sindermann, 408 U.S. 593, 601-02, another employment case decided by the United States Supreme Court on the same date as Roth, the majority stated:
“A person’s interest in a benefit is a ‘property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. [Roth, 408 U.S. at 577.]
*74 “A written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher’s claim of entitlement to continued employment unless sufficient ‘cause’ is shown. Yet absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a ‘property' interest in re-employment. For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be ‘implied.’ 3A. Corbin on Contracts §§ 561-572A(1960). Explicit contractual provisions maybe supplemented by other agreements implied from ‘the promisor’s words and conduct in the light of the surrounding circumstances.’ Id., at § 562. And, ‘[t]he meaning of the [the promisor’s] words and acts is found by relating them to the usage of the past.’ ” [Roth, 408 U.S. at 577.] [Emphasis added.]
In this case, Medicine Horse had been employed by the school district for four and one-half years. He testified that he was a temporary employee for one year, but that after one year he was given permanent status which included sick leave, annual leave, vacation pay, and some expectation of permanency. He testified that he was given that expectation not only by another employee, but by John Pretty On Top, a member of the school board. No one testified to the contrary. The only other witness who testified before the County Superintendent about Medicine Horse’s status was Gary Greseth. Greseth was the principal of noninstructional affairs who supervised Medicine Horse. He also testified that Medicine Horse was a permanent employee.
The majority relies on § 39-2-503, MCA, for its conclusion that Medicine Horse was an employee at will because he had no specified term. However, I would conclude that when an employee is advised that he is permanent, that is a specified term.
Furthermore, we have previously held in other circumstances that in spite of the language found in § 39-2-503, MCA, an employee can have a reasonable expectation of job security, based on representations by his employer, even though he has no specified term of employment. See Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015. Although the specific cause of action authorized under Dare has been superseded by the Wrongful Discharge From Employment Act found at §§ 39-2-901, MCA, et seq., the principle remains that the effect of the at will statute is subject to alteration by the conduct of the parties to the employment relationship.
*75 Because the employee in this case was led to believe that after a year of probationary employment he had achieved “permanent” status, I would conclude that his interest in his employment became a “property” interest for due process purposes based upon the “mutually explicit understandings” between the employee and his employer. Having reached that conclusion, the next question is, “what kind of‘due process’ was he entitled to?”
The school district contends that because he was afforded an opportunity to contest his termination after the fact, Medicine Horse received all the due process that he was entitled to. However, for obvious reasons, an after the fact hearing does not provide due process. For one thing, the decision that Medicine Horse was undesirable and should be terminated had already been made without his presence or input. Any further consideration of his value as an employee by the same board necessarily had to have been tainted by the board’s concern for justifying its own actions. I am sure that this is one of the considerations the United States Supreme Court had in mind when it decided Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487. In that case, the court held that only pretermination input from the employee could satisfy the due process clause. The court concluded that where the employee had a property right in his employment, his employer could not dictate the terms of the due process to which he was entitled. Specifically, the court found that a post-termination opportunity to be heard was inadequate. The court stated:
“An essential principle of due process is that a deprivation of fife, liberty, or property “be preceded by notice and opportunity for hearing appropriate to the nature of the case.’ Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 94 L.Ed. 865, 70 S.Ct. 652 (1950). We have described ‘the root requirement’ of the Due Process Clause as being ‘that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.’ Boddie v. Connecticut, 401 U.S. 371, 379, 28 L.Ed. 2d 113, 91 S.Ct. 780 (1971) (emphasis in original); see Bell v. Burson, 402 U.S. 535, 542, 29 L.Ed.2d 90, 91 S.Ct. 1586 (1971). This principle requires “some kind of a hearing” prior to the discharge of an employee who has a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S. at 569-570, 33 L.Ed.2d 548, 92 S.Ct. 2701; Perry v. Sindermann, 408 U.S. 593, 599, 33 L.Ed.2d 570, 92 S.Ct. 2694 (1972). As we pointed out last Term, this rule has been settled for some time now. Davis v. Scherer, 468 U.S. 183, 192 n. 10, *76 82 L.Ed.2d 139, 104 S.Ct. 3012 (1984); Id., at 200-203, 82 L.Ed.2d 139, 104 S.Ct. 3012 (Justice Brennan, concurring in part and dissenting in part). Even decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond.
“The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.”
Loudermill, 470 U.S. at 542, 546.
For Medicine Horse, his source of livelihood was at stake. A job he had performed for four and one-half years was on the line. The possibility of future employment had to have been adversely affected by the circumstances of his discharge.
It does not seem like too much to require that before that discharge he be given notice of the reasons and an opportunity to respond.
In this case, I conclude that Medicine Horse had a property interest in his employment and that, therefore, he was entitled to notice of the charges against him and an opportunity to respond to those charges prior to his termination as an employee. Since the County Superintendent, State Superintendent, and District Court have all denied Medicine Horse’s petition based on what I conclude to be a misapplication of the Constitution, I would reverse the District Court.
JUSTICE HUNT concurs in the foregoing dissent of JUSTICE TRIEWEILER.