No. 96-011

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

KATHARINE S. BOREEN, formerly
known as KATHARINE SELBY,

      Plaintiff and Appellant,

  v.

GEORGE CHRISTENSEN, a/k/a GEORGE P. CHRISTENSEN,
a/k/a "CHRIS" CHRISTENSEN, and F. GUY YOUNGBLOOD,
acting individually and in the capacities of
administrative officers of the DEPARTMENT OF
MILITARY AFFAIRS, STATE OF MONTANA,

      Defendants and Respondents.

FILED

DEC 3 0 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
              In and for the County of Lewis & Clark,
              The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Peter Michael Meloy (argued); Meloy & Morrison,
          Helena, Montana

      For Respondents:

          Hon. Joseph P. Mazurek, Attorney General,
          James M. Scheier (argued), Ass't Attorney General,
          Helena, Montana

                     Submitted:  September 10, 1996

                        Decided:  December 30, 1996

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Plaintiff Katharine S. Boreen (Boreen) appeals the September 14, 1995 Order of the First Judicial District Court, Lewis and Clark County, granting qualified immunity to Defendant F. Guy Youngblood (Youngblood) and dismissing Boreen's 42 U.S.C. § 1983 claim as to Defendant Youngblood. We affirm.

We consider the following issue on appeal:

Did the District Court err in granting Defendant Youngblood qualified immunity on the basis that Boreen's property interest in her employment was not clearly established law at the time she was constructively discharged by the Defendants?

### Factual and Procedural Background

Boreen was employed by the Montana Department of Military Affairs. Following her resignation from her employment in April 1990, Boreen filed a complaint against the Department of Military Affairs, alleging constructive discharge under the Montana Wrongful Discharge From Employment Act. That action was dismissed because it was filed after the statute of limitations had passed. Boreen then filed a complaint pursuant to 42 U.S.C. § 1983 (§ 1983) alleging that she was terminated from her employment with the Department of Military Affairs, and that she was deprived of a property interest in her employment without due process of law. Youngblood, one of the named Defendants, filed an answer to the complaint. Boreen then filed an amended complaint, alleging that

2

she was constructively discharged from her employment. Youngblood filed an answer to the amended complaint, raising, *inter alia*, the affirmative defense of qualified immunity. Youngblood also filed a motion to dismiss or for summary judgment. Youngblood made two primary arguments in his motion to dismiss: (1) government employees who are not covered by a collective bargaining agreement or a contract for a specific duration do not have a property interest in their employment; and (2) he was entitled to qualified immunity. Youngblood also argued that the amended complaint was barred by *res judicata* and collateral estoppel.

Following a hearing, in a November 16, 1993 Order, the District Court granted Youngblood's motion to dismiss on the ground that Boreen had no property interest in her employment. The District Court rejected the argument that Boreen's complaint was barred by *res judicata* and collateral estoppel. The District Court declined to rule on the question of whether Youngblood was entitled to qualified immunity.

Boreen submitted an interlocutory appeal of the November 16, 1993 Order to this Court, which reversed the District Court's decision. Boreen v. Christensen (1994), 267 Mont. 405, 884 P.2d 761 (Boreen I). This Court determined that Boreen, whose employment was subject to "just cause" requirements for termination, had a property interest in her employment and could therefore maintain an action under § 1983. The issues of qualified

3

immunity, *res judicata*, and collateral estoppel were not before this Court in that initial appeal.

The case was remanded to District Court where Youngblood renewed his motion to dismiss or for summary judgment upon the grounds of qualified immunity, *res judicata*, and collateral estoppel. In a September 14, 1995 Order, the District Court held that it had already rejected Youngblood's motion for dismissal on the basis of *res judicata* or collateral estoppel and resolved the case on the issue of qualified immunity. The Court granted Youngblood qualified immunity on the basis that he did not violate any of Boreen's clearly established rights of which a reasonable person should have known.

Boreen obtained a Rule 54(b), M.R.Civ.P., certification authorizing an interlocutory appeal of the Court's September 14, 1995 Order since the Order effectively dismissed the case as against both defendants.

### Standard of Review

The question of whether a district court properly granted qualified immunity involves a determination of whether the rights in question were clearly established at the time of their alleged violation, and is a question of law, reviewable, *de novo*. Cannon v. City and County of Denver (10th Cir. 1993), 998 F.2d 867; Williams v. Commonwealth of Kentucky (6th Cir. 1994), 24 F.3d 1526.

In Montana, the standard of review of a district court's conclusions of law is whether the court's interpretation of the law

4

is correct.  Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

### ISSUE

Was the District Court correct in holding that Boreen's property interest in her employment was not clearly established law at the time she was constructively discharged from her employment, thereby rendering Youngblood immune from suit?

The District Court dismissed Boreen's § 1983 claim against Youngblood on the grounds that Youngblood is entitled to qualified immunity.  Because § 1983 is a federal remedy, qualified immunity from a § 1983 suit is a matter of federal law.  Finch v. Wemlinger (Minn. 1981), 310 N.W.2d 66, 69-70; Cooperman v. University Surg. Assoc., Inc. (Ohio 1987), 513 N.E.2d 288, 296 (superseded by state statute in 1990).

The purpose of granting qualified immunity to public officers is not to protect them from the consequences of their wrongful acts but to facilitate the proper operation of government by protecting public officers in the discharge of their duties where they act honestly and in good faith.  Rickard v. Paradis (1975), 167 Mont. 450, 539 P.2d 718.  The good faith requirement has since been modified as set forth below.

The theory of qualified immunity first arose as a defense for police officers in Pierson v. Ray (1967), 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288.  The United States Supreme Court in Scheuer v. Rhodes (1974), 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, expanded the defense to apply to a broader group of executive branch officers.  Rhodes arose out of the shootings at Kent State

5

University in 1970. The plaintiffs alleged that Rhodes, then Governor of the State of Ohio, recklessly deployed the National Guard to the Kent State campus. Rhodes, 416 U.S. at 232. The Supreme Court found that a qualified immunity should be available to officers of the executive branch of government because of the wide range of discretion that officers of the executive branch are called upon to exercise. Rhodes, 416 U.S. at 247. The Court found that:

> It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

Rhodes, 416 U.S. at 247-48. The Court explored the contours of the doctrine of qualified immunity through subsequent decisions that discussed an "objective" versus a "subjective" test of good faith. See Wood v. Stricklund (1975), 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214. An official's subjective good faith belief as to whether he or she violated the plaintiff's constitutional rights was no longer relevant after Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. The standard for granting qualified immunity was reformed in this matter:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
>
> . . . .
>
> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an

6

action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful . . . the defense would turn primarily on objective factors.

Harlow, 457 U.S. at 818-19.

Harlow and its progeny make clear that the qualified immunity inquiry is an objective one. See, e.g., Davis v. Scherer (1984), 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139. The qualified immunity inquiry focuses on whether a defendant, faced with circumstances similar to those of the defendant before the court and in light of the legal authorities extant at the time the defendant acted, reasonably should have known that his or her conduct was unlawful. Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant (1991), 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (quoting Malley v. Briggs (1986), 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271, 280).

Harlow presents a two-pronged test to determine whether an official will be granted qualified immunity. The court must first consider whether a clearly established right has been violated and second, the court must determine whether a reasonable person or official would have known that his conduct violated that right. Sacco v. High Country Indep. Press (1995), 271 Mont. 209, 216, 896 P.2d 411, 415.

The first prong of the Harlow qualified immunity test depends on whether the constitutional right allegedly violated was clearly

7

established at the time of the official conduct giving rise to the litigation. See Finkelstein v. Bergna (9th Cir. 1991), 924 F.2d 1449; Burgess v. Pierce County (9th Cir. 1990), 918 F.2d 104.

The plaintiff has the burden of proving that the right which the defendants allegedly violated was clearly established at the time of the alleged misconduct. Baker v. Racansky (9th Cir. 1989), 887 F.2d 183, 186.

A defendant need not have actual knowledge of a decision which the plaintiff claims clearly established the law. Neither should the defendant be required to have actual knowledge of a decision upon which he relies to show that the law was not clearly established. See, e.g., Mitchell v. Forsyth (1985), 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411; Anderson v. Creighton (1987), 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523.

In the present case, Boreen alleges that she had a clearly established protected property interest in her employment with the Department of Military Affairs when she was constructively discharged from her job by Youngblood in April of 1990.

Youngblood is raising the qualified immunity defense on the basis that Boreen's protected property interest in her employment was not a clearly established right at the time she was constructively discharged. Although this Court held that Boreen did have a protected property interest in her employment in Boreen I, we must ask whether this property interest was a clearly established right in 1990 when Boreen was constructively discharged.

8

The United States Supreme Court has not established the requisite hierarchy of law from which to determine whether a right is clearly established. See, e.g., Harlow, 457 U.S. at 818 n.32 (expressly leaving this question open). Whether a United States Supreme Court decision is necessary, whether circuit courts may look to lower federal court decisions, and whether state decisional law plays a role are questions disputed among circuit courts. See Richard B. Saphire, *Qualified Immunity in Section 1983 Cases and the Role of State Decisional Law*, 35 Ariz. L. Rev. 621, 633 (1993). Circuit courts are in agreement that the determination of whether the right in question is clearly established begins with a relevant United States Supreme Court decision if available. See, e.g., Thomas v. Whalen (6th Cir. 1995), 51 F.3d 1285.

The United States Supreme Court's seminal case establishing an employee's property interest in employment is Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. In Loudermill, the Court held that an Ohio statute which protected a public employee's employment during "good behavior and efficient service" and prohibited dismissal "except for misfeasance or non-feasance in office" created a property interest in continued employment which could not be taken away without appropriate procedural safeguards. The Court concluded in Loudermill that the "just cause" provision in the Ohio statute created such a property interest.

The Court in Loudermill did not hold that all employees whose employment is subject to "just cause" or "for cause" protection

9

have a property interest in their employment. Rather, the Supreme Court held that the language in the Ohio statute, which provided that an employee could not be fired except for specific listed reasons, gave the plaintiff a property interest in his job under Ohio law. Loudermill, 470 U.S. at 538-39. The Ohio laws expressly provided that employees were classified civil servants who were entitled to hold positions of employment, and that they were entitled to hold their positions during good behavior and efficient service. The Ohio employees' pay could not be reduced, nor could they be suspended, or removed from their positions, except for specific statutory violations. Loudermill, 470 U.S. at 538.

The Supreme Court decision in Loudermill emphasized that property interests "are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Loudermill, 470 U.S. at 538 (quoting Board of Regents v. Roth (1972), 408 U.S. 564, 577). Thus the question of whether a property interest exists must be examined by reference to state law. Bishop v. Wood (1976), 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690. The Loudermill decision, therefore, did not answer the question of whether a public employee in Montana has a property interest in his or her employment.

The "just cause" provision analyzed in Loudermill was contained in an Ohio statute whereas the "just cause" provision Boreen claims protection under is found in a Montana administrative rule. Rule 2.21.6509, ARM. In addition, Montana has an "at will"

10

employment statute, § 39-2-503, MCA, which has been construed as providing no property interest in employment absent a "specified term" of employment. Reiter v. Yellowstone County (1981), 192 Mont. 194, 627 P.2d 845. Loudermill did not address, nor did it resolve, the issue of whether a "just cause" regulation converts an employment "at will" to employment for a specified term. It is necessary then to examine Montana law as expressed by this Court and the federal courts interpreting Montana law to determine if Boreen had a property interest in her employment in 1990.

This Court described the issue of whether a public employee in Montana had a property right in employment as one of "first impression" in Boreen I. Boreen I, 884 P.2d at 763. The Court confirmed that "a close reading of our prior cases clarifies that we have not heretofore decided the issue presented in the instant case . . . ." Boreen I, 884 P.2d at 769. While the nonexistence of a decision specifically addressing the alleged right is a "significant consideration" in determining whether the right is clearly established, Fortner v. Thomas (11th Cir. 1993), 983 F.2d 1024, 1028, the plaintiff need not produce a case directly on point to show that a right was clearly established. Ostlund v. Bobb (9th Cir. 1987), 825 F.2d 1371, 1374. Nonetheless, the contours of the right allegedly violated must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson, 483 U.S. at 640.

Montana has an "at will" employment statute providing that an employment with "no specified term" may be terminated by either

11

party on notice to the other. Section 39-2-503, MCA. Under that law, as construed by this Court prior to April 1990, such "at will" employees not covered by any written contract or collective bargaining agreement had no property interest in their employment. Reiter, 627 P.2d at 849. In Reiter this Court considered the case of a county custodian whose employment was terminated after eighteen years of service. In rejecting Reiter's argument that he had a property interest in his employment, this Court stated:

> It is clear . . . that property interests are created and defined by state law. The Montana statute [§ 39-2-503, MCA] creates no property interest in employment if there is no specified term.

Reiter, 627 P.2d at 849. Reiter had argued that his longevity of service, by implication, created a property interest. The Court rejected that argument, and the Court's pronouncements provided a firm basis for the conclusion that state employees with no specified term of employment likewise had no property interest in their employment:

> Even though appellant may have had an implied contract with the county by virtue of his longevity of service, it would be a contradiction in terms to say that he had an "implied specified" period of employment. A specified term is one which the parties expressed, and there was no expression here concerning the length of employment. Section 39-2-503, MCA, operates to fill the gap left by the parties by defining the relationship as an "at-will" employment.

Reiter, 627 P.2d at 849. The Court did not answer the question of whether an administrative regulation containing a "just cause" termination provision creates a "specified period" of employment and thus a property interest in that employment.

12

The underlying administrative regulation which this Court considered in conjunction with Laudermill as giving rise to a property interest in Boreen I, was first discussed in Nye v. Department of Livestock (1982), 196 Mont. 222, 639 P.2d 498. The Court initially determined that Nye had completed her probationary period of state employment and hence "had permanent status" in her public employment, and then held that there was no showing of "just cause" for removing her from her position. Nye, 639 P.2d at 502.

In considering the question of whether Nye was entitled to judicial review of the decision following her grievance, the Court explained that the answer depended on whether her grievance was a contested case under the Montana Administrative Procedure Act (MAPA). Nye, 639 P.2d at 500-501.

The Court noted that whether a person was entitled to a contested case hearing depended not only on statutory rights providing for due process but also on whether a hearing is required as a matter of constitutional law. Nye, 639 P.2d at 501. Nye had not cited any statutory or constitutional authority which indicated that a person in Nye's position was "required by law" to be given an opportunity for hearing prior to a determination of her rights or privileges. Nye, 639 P.2d at 501. The Court indicated that its own research had likewise not revealed any such authority. Therefore, the Court concluded that Nye's grievance procedure did not qualify as a contested case under MAPA and consequently, Nye was not entitled to judicial review. Nye, 639 P.2d at 501. Although the Court held that Nye had "permanent status" in her

13

employment, it did not find that such "permanent status" was a "specified term" that would defeat the "at will" nature of Nye's employment, giving her a constitutional right to a hearing.

The Court next considered whether Nye could bring a claim of wrongful discharge. Agreeing with the district court that Nye's employment was "at will" pursuant to § 39-2-503, MCA, this Court nevertheless found that Nye was not precluded from bringing a wrongful discharge claim:

> The District Court's order of dismissal [of the wrongful discharge claim] appears to rest upon the fact that Nye's employment was "at will." Section 39-2-503, MCA. However, the tort of wrongful discharge may apply to an at will employment situation.

Nye, 639 P.2d at 501-502.

The Court recognized that the administrative "just cause" rule, applicable to Nye, "may be the source of a public policy [the violation of] which would support a claim of wrongful discharge." Nye, 639 P.2d at 502. Reciting the due process protections contained in the policy, the Court concluded that the Department of Livestock failed to apply these regulations to Nye and, thereby, violated public policy. Nye, 639 P.2d at 502. The Court then remanded the case on this issue.

Citing Nye, a later decision of this Court stated that a wrongful discharge claim based on a public policy violation is one of several "exceptions" to the right of "at will" employers to discharge employees. Prout v. Sears, Roebuck & Co. (1989), 236 Mont. 152, 157, 772 P.2d 288, 291. As noted by Justice Morrison in

14

a subsequent concurring opinion, such a court-created exception does not abrogate the statutory employment "at will" rule:

> The breach of the obligation owed by the employer may give rise to a tort action on the part of the employee, but does not convert "at will" employment to employment for a specific term.

Dare v. Montana Petroleum Mktg. Co. (1984), 212 Mont. 274, 286, 687 P.2d 1015, 1022 (Morrison, J., specially concurring).

When Nye is read in conjunction with Reiter and subsequent Montana decisions analyzing the "at will" statute, it is apparent that a Montana employee subject to a "just cause" provision did not have a clearly established property interest in her employment subject to the protections of the Due Process Clause. Reiter held that an implied employment contract did not create a "specified term" of employment nor did "permanent status" in the Nye case create a "specified term" that would render the "at will" statute inapplicable to an employee. Although the Court in Nye held that violation of the administrative "just cause" provision may be the basis for a claim of wrongful discharge it did not hold that "just cause" may be the basis for a protected property interest. Subsequent case law emphasized that a wrongful discharge claim did not convert an "at will" employment to a "specified term."

Although we said that Reiter and a subsequent Montana federal district court decision suggested our decision in Boreen I, this "suggestion" cannot fairly be said to have clearly established the law. "Government officials . . . are not charged with predicting the future course of constitutional law." Ostlund, 825 F.2d at 1374.

15

While the pre-1990 case law did not hold specifically that an administrative "just cause" provision did not create a property interest in employment, neither was it clear that the "just cause" provision affirmatively established a property interest. Certainly, the "contours" of an employee's right to a property interest in employment were not sufficiently clear such that a reasonable official would understand that he was violating that right. See Anderson, 483 U.S. at 640. We therefore hold that at the time Boreen was constructively discharged in 1990, it was not clearly established that she had a protected property interest in her employment.

Although Boreen alleges that it was improper for the District Court to consider post-1990 decisions in its determination of whether her property interest in employment was clearly established in 1990, these decisions are relevant indicators of the state of the law before Boreen I. Generally courts do not look to post-incident decisions in determining whether the prior law had been clearly established, but such cases may serve as persuasive authority. Baker, 887 F.2d at 187.

The District Court noted that in 1991, this Court ruled that a governmental (school district) employee did not have a property interest in his employment. Medicine Horse v. Big Horn Cty. Sch. Dist. (1991), 251 Mont. 65, 823 P.2d 230. In 1994, the Ninth Circuit Court of Appeals, in Hollister v. Forsythe (9th Cir. 1994), 22 F.3d 950, construed Montana law and specifically the Reiter and Medicine Horse decisions, and ruled that a county employee subject

16

to "just cause" requirements for termination did not have a property interest in employment. This Court acknowledged the Hollister decision in Boreen I, stating "we simply do not agree" with the decision. Boreen I, 884 P.2d at 769. Our disagreement with the result in Hollister illustrates the lack of clarity on the issue of whether a Montana employee subject to a "just cause" provision had a protected property interest in her job before Boreen I.

A determination of whether the law was clearly established requires an analysis of the state of the law as of the date of the incident in question as opposed to a review of legal developments after the incident. Nonetheless, the District Court did not err in noting that numerous judicial decisions after 1990 illustrate the fact that the question of whether an "at will" employee had a property right in employment was not "clearly established" before our 1994 decision in Boreen I. Moreover, the Court's conclusion is not inconsistent with our analysis of the pre-1990 authority.

Boreen also argues that Rule 2.21.6509, ARM, the administrative rule which requires just cause and due process for disciplinary action, clearly established the right upon which Boreen bases her § 1983 claim. In other words, Boreen contends that the administrative rule is the source of her procedural due process right, and that the rule created clearly established constitutional rights as of 1990, thereby defeating Youngblood's qualified immunity claim. Boreen's argument is incorrect.

17

A similar argument was made by a discharged employee in Price v. Brittain (5th Cir. 1989), 874 F.2d 252. Price alleged that he was deprived of his property interest in employment without procedural due process. He claimed that his employee handbook, which required notice and an opportunity to respond prior to any discharge, "made the contours of his procedural due process rights clear to defendants." Price, 874 F.2d at 261. Citing the Supreme Court's decision in Davis, the appeals court rejected the argument:

> [E]mployee handbooks cannot alone clarify established constitutional rights that are not themselves clear in light of preexisting law.

Price, 874 F.2d at 262. The court found that the defendant was entitled to qualified immunity.

The Fifth Circuit Court of Appeals' holding as to the employee handbook underscores the problem with Boreen's argument on the issue of whether the "just cause" provision by itself clearly established a property right in employment as of 1990.

As of 1986, this Court had held in Bick v. State, Dept. of Justice (1986), 224 Mont. 455, 457, 730 P.2d 418, 420, that "it is axiomatic in Montana law that a statute cannot be changed by administrative regulation." (Citation omitted.) Accordingly, the "just cause" provision in Rule 2.21.6509, ARM, did not by itself, as of 1990, clearly establish a property right in the face of the "at will" employment statute, § 39-2-503, MCA.

Our decision in Boreen I was based not on the administrative "just cause" provision alone, but on the administrative "just

18

cause" provision read in conjunction with the United States Supreme Court decision in Loudermill and our decision in Nye.

As of April of 1990, § 39-2-503, MCA, provided that an employment "having no specified term" may be terminated at the will of either party. At that time, this Court had not held that an administrative rule containing a "just cause" termination provision constituted a "specified term" of employment which would render the "at will" statute inapplicable to an employee, thereby creating a property interest in his or her employment.

As the dissent points out, the "at will" employment doctrine embodied in § 39-2-503, MCA, is "antithetical" to the "just cause" requirement of Rule 2.21.6509, ARM. However, contrary to the dissent's conclusion, the fact that the administrative rule is incompatible with the statute, only goes to prove that the law was confusing (i.e., not *clearly established*) until our decision in Boreen I.

Because we hold that Boreen's property interest in her employment was not clearly established in April of 1990, we need not reach the second prong of the Harlow test for granting qualified immunity. The second prong asks whether a reasonable official under the defendant's circumstances would have known that his conduct violated the law. Because the law was not clearly established a reasonable official could not have known of it and the second prong need not be addressed. See Lucero v. Hart (9th Cir. 1990), 915 F.2d 1367, 1371 (citing Harlow for the proposition that the unsettled nature of the law, on the issue of entitlement

19

to a job, necessarily means that the government officials could not have violated a clearly established statutory or constitutional right of which a reasonable person would have known).

We hold, therefore, that Boreen's property interest in her employment was not clearly established when she was constructively discharged in 1990 and, consequently, Youngblood is immune from suit. The District Court's grant of Youngblood's motion to dismiss on the basis of qualified immunity was therefore correct. Because we affirm the District Court's dismissal on the basis of qualified immunity we do not reach the issues of *res judicata* and collateral estoppel. Affirmed.

_____
                       Justice

We concur:

_____
         Chief Justice

_____

_____

_____
         Justices

20

The Honorable Richard G. Phillips,
Judge of the District Court, sitting
for Justice Charles E. Erdmann

21

Justice James C. Nelson dissenting.

I respectfully dissent. Except as herein set forth, I do not disagree with the majority's explication of the general principles of law pertaining to qualified immunity and to an employee's property interest in her employment. I do, however, disagree with its application of these principles to the facts here. In that regard, I also believe that the courts--this Court included--have unnecessarily and improperly confused what is, in essence, a simple and straightforward legal concept that has been clearly established in the law for more than a decade: An employee whose employment is subject to termination only for "just cause" or "good cause" because of a contract, statute, rule or policy has a property interest in her employment and may not be deprived of that interest without due process of law; such an employee is not an "at will" employee.

First, as regards this case, the majority correctly acknowledges that, in the application of the doctrine of qualified immunity, whether the law at issue was "clearly established" focuses (in the words of the opinion) on the "legal authorities extant at the time the defendant acted." What, then, was the law "extant" at the time Boreen was constructively terminated on April 13, 1990? Obviously, in answering this question we need look no further than to federal law and Montana law as of that date.

As to federal law, the U.S. Supreme Court's decision in Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, had been the law of the land for

22

five years prior to Boreen's discharge. We discussed Loudermill at length in Boreen v. Christensen (1994), 267 Mont. 405, 884 P.2d 761, (Boreen I), and there is no need to repeat that analysis. Important to our discussion here, however, and again as the majority acknowledges, the Court concluded in Loudermill that the "just cause" provision in the Ohio statute at issue there created a property interest in Loudermill's public employment. The majority cites no federal case decided in the years between Loudermill and Boreen's termination that departed from that simple and straightforward proposition.

Accordingly, we must next look to the State of Montana law as of April 13, 1990. For some twelve years prior to Boreen's discharge, her public employment was subject to and was protected by State administrative regulations which (a) premised all disciplinary action, including discharge, on there being "just cause" and (b) required "due process" in the administration of such discipline or discharge. Again, these administrative regulations are discussed in and appended to our decision in Boreen I.

Thus, as of April 13, 1990, a public employer in Montana which had adopted the administrative regulations aforementioned, knew or should have known that the public employee could not be terminated absent there being just cause, as defined in 2.21.6507(6), ARM, and that the employee was entitled to due process prior to termination all as set forth and defined in 2.21.6506, 6507 and 6509, ARM. Moreover on that date, given Loudermill, that same public employer knew or should have known that if state law conditions termination

23

of public employment on "just cause"--as was the case here--then that law creates in the employee a property interest in her employment.

In short, on April 13, 1990, the law was clearly established that an employee whose employment is subject to termination only for "just cause" under state law had a property interest in her employment and could not be deprived of that interest without due process of law. That simple and straightforward legal principle derived directly from the unambiguous requirements of Montana law and federal law "extant" on that date. On April 13, 1990, Youngblood needed to look no further than the Administrative Rules of Montana and Loudermill to arrive at that conclusion.

Notwithstanding, Respondents here go to great lengths arguing that the above settled principle of law was not clearly established in April 1990--and in fact was not clearly established until our decision in Boreen I. The majority agrees. However, viewed from an objective standard, as the majority concedes it must, such a position is insupportable.

First, as early as 1985, the principle of law articulated above could not have been more clear to Montana public officials. Through Attorney General Mike Greely, Montana participated in Loudermill as amicus curiae on behalf of the Cleveland Board of Education. See, Loudermill, 470 U.S. at 534. The State took the position that state employees should not have a property interest in their employment simply because they are protected by an administrative just cause requirement. Obviously, Loudermill can

24

hardly be read as supportive of that position. Having advanced that argument, however, and in light of the Court's decision in Loudermill, the handwriting was clearly on the wall five years before Boreen was constructively discharged. She was protected by a just cause/due process provision in Montana law; she had a property interest in her employment.

Second, while not dealing with the constitutional property interest issue addressed in Loudermill, this Court recognized in Nye v. Department of Livestock (1982), 196 Mont. 222, 639 P.2d 498, that the same just cause/due process regulations which governed Boreen's employment were a source of public policy that would support a claim of wrongful discharge and that the State (Department of Livestock) had violated public policy by failing to apply these regulations. Again, three years before Loudermill, public employers in Montana were on notice that just cause/due process requirements in administrative regulations would implicate an employee's right to notice and an opportunity to be heard and to the retention of her job if those regulations were not followed.

Under these circumstances and given the actual state of the law as of April 13, 1990, any claim that the principle of law establishing Boreen's property interest in her employment was not clearly established must necessarily find justification in some other basis than a simple reading of the provisions of Montana's public policy expressed in the Administrative Rules of Montana cited above and in what the majority concedes is the "seminal [U.S. Supreme Court] case" on this subject.

25

Enter the "at will" employment doctrine. As of April 13, 1990, one case, Reiter v. Yellowstone Cty. (1981), 192 Mont. 194, 627 P.2d 845, had discussed Montana's at will employment statute, § 39-2-503, in conjunction with an employee's claim of a property interest in his employment. We held that, "[t]he Montana statute create[d] no property interest in employment if there [was] no specified term" and therefore, Reiter had no constitutionally protected property interest in his employment. Reiter, 627 P.2d at 849-50. Importantly, as we pointed out in Boreen I:

> Reiter did not raise, nor did we address, the effect on the "at will" nature of the plaintiff's employment of the parties conditioning termination on a demonstration of "just cause" under an administrative regulation adopted by the government. In fact, we specifically pointed out that Reiter's employment "was not covered by any written contract or collective bargaining agreement or ordinance."

Boreen I, 884 P.2d at 765 (citing Reiter, 627 P.2d at 847).

Accordingly, whatever Reiter stands for, it can hardly be argued that our decision in that case made unclear the unambiguous requirements of Montana law as expressed in the above cited administrative regulations and in the subsequent Loudermill decision, when Reiter did not even address the Loudermill issue. Correctly, we rejected out of hand any application of Reiter (and its progeny) in Boreen I and we should, likewise, do so here.

Montana's "at will" employment statute and the cases interpreting that statute simply have no bearing where the employee is protected by a just cause/due process legal requirement. In fact, the whole concept of "at will" employment is antithetical to the legal mandate that an employee may not be discharged except for

26

just cause or good cause. "At will" employment, as we have defined it, is the ability of an employer to dismiss his employee "for a good reason, bad reason or for no reason at all." Scott v. Eagle Watch Investments, Inc. (1991), 251 Mont. 191, 195, 828 P.2d 1346, 1349. That definition simply cannot be reconciled with a legal requirement that the employer can only discharge his employee for just cause or good cause--i.e., as the corollary, that he may *not* terminate his employee for a bad reason or no reason at all. The concepts of "at will" employment and "just cause" termination are purely and simply incompatible with each other, and our use here of "at will" employment cases to justify our decision not only flies in the face of our rejection of the applicability of those cases in Boreen I, but also lends further confusion to what was, at least in April of 1990, a clearly established principle of law. The issue of "at will" employment was a red herring in Boreen I; it is in this case as well. Boreen never was an "at will" employee; she was entitled to retain her job until her employer established just cause for her termination and provided her with due process before discharging her. Boreen I, 884 P.2d at 766-67.

That brings me to my last point. The law in April 1990 was clearly established. The majority's reliance on post-1990 cases to explain what law was extant at the time Boreen was constructively discharged is plainly improper under the doctrine of qualified immunity articulated in Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. The fact that since 1990 courts have engrafted onto the rule in Loudermill legal concepts--like "at

27

will" employment--that plainly have no bearing on the rule articulated in that case speaks not to any confusion in the law in 1990, but rather to judicial attempts to avoid what Loudermill--and Montana's administrative regulations--clearly require.

Much is made by the Respondents and by the majority of our statements in Boreen I that our decision was one of first impression. True enough. Boreen I was just such a case; this Court had not, prior to that case, directly addressed the Loudermill issue. It does not, however, follow from a case being one of first impression before a particular court, that the legal principle on which the case is decided has not been already clearly established in the black-letter law or in some other controlling body of case law. In fact, as pointed out above, that was precisely the situation in Boreen I. Montana's administrative regulations and Loudermill dictated the rule in Boreen I. Moreover, by the time we decided Boreen I in 1994, the courts had had four years to complicate and confuse what was clear in 1990. Notwithstanding, even with the additional four years of state and federal case law, this Court had no apparent difficulty in concluding, on the basis of Montana's administrative regulations and Loudermill, that Boreen had a property interest in her public employment. If that simple principle of law was clear to this Court in 1994, it was, likewise, certainly clearly established in April 1990. We did not make any new law in 1994; we simply set forth what clearly had been the law since 1985.

Our decision here cannot be justified on the basis of the

principles of law cited by the majority. The law was clearly established on April 13, 1990: because Boreen's employment was protected by state regulations prohibiting her from being discharged absent her employer demonstrating just cause, she had a property interest in her employment and could not be deprived of that property interest without due process of law. Youngblood is not entitled to qualified immunity from her § 1983 claims.

Katharine Boreen won the battle in Boreen I; unfortunately, she has lost the war in Boreen II. I dissent.

_____
Justice

Justice Terry N. Trieweiler and William E. Hunt, Sr., join in the foregoing dissent.

_____
_____
Justices

29

December 30, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Peter Michael Meloy, Esq.
MELOY & MORRISON
80 South Warren
P.O. Box 1241
Helena, MT 59624-1241

Jospeh P. Mazurek, Attorney General
James M. Scheier, Assistant Attorney General
Justice Building
Helena, MT 59620-1402

Hon. Richard G. Phillips
District Court Judge
201 West Main Street
Sidney MT 59270

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy