No. 97-309

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 313N

JOSEPHINE BATOON,

Plaintiff, Respondent, and Cross-Appellant,

v.

CITY OF CONRAD,

Defendant, Appellant, and Cross-Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Pondera,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gale R. Gustafson, Gustafson & Rohrer; Conrad, Montana

For Respondent:

Antonia P. Marra, Bell and Marra; Great Falls, Montana

E. June Lord, Attorney at Law; Great Falls, Montana

Submitted on Briefs: July 29, 1998

Decided: December 17, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. Josephine Batoon brought this action on October 12, 1989, in the Ninth Judicial District Court, Pondera County, against the City of Conrad to recover damages for wrongful discharge, defamation, discrimination, and violation of her civil rights by reason of the City's termination of her employment on October 14, 1988. The District Court dismissed Batoon's claim for defamation upon stipulation of the parties on July 25, 1989. On July 13, 1993, the City filed a motion for summary judgment which the District Court denied on September 27, 1993. The District Court bifurcated Batoon's remaining claims, and concluded with regard to liability that Batoon had not abandoned her job by reason of her absence from work and that the City had wrongfully discharged her. The District Court further concluded that Batoon's discrimination claim and her claim that the City violated her civil rights was unsupported by the evidence. On September 16, 1996, the District Court denied the City's request to certify its order regarding the liability issue as a final judgment to facilitate an appeal. On March 3, 1997, the District Court awarded Batoon costs and damages for being wrongfully discharged by the City. On March 6, 1997, the City filed a motion for amendment of judgment, which the District Court denied on March 7, 1997. On April 4, 1997, the City filed its notice of appeal, and on April 17, 1997, Batoon field her notice of cross-appeal on the issues of race and age discrimination and the violation of her civil rights. We affirm the judgment of the District Court.

¶3. The issues presented by the City of Conrad on direct appeal are as follows:

¶4. 1. Did the District Court err when it found that Batoon did not abandon her job with the City of Conrad when she failed to report to work for five consecutive days?

¶5. 2. Did the District Court err when it found that the City of Conrad violated its personnel policy?

¶6. 3. Did the District Court correctly determine that Batoon should be entitled to lost earnings?

¶7. 4. Did the District Court err when it failed to conclude that the judgment against the City should not accrue any interest if affirmed by this Court and paid within two years?

¶8. 5. Did the District Court err by not dividing the costs of production of the District Court transcript on appeal?

¶9. The issues raised by Batoon on cross-appeal are as follows:

¶10. 1. Did the District Court err when it concluded that Batoon had no property interest in her continuing employment with the City of Conrad?

¶11. 2. Did the District Court err when it concluded that the City of Conrad had not discriminated against Batoon based upon her age and race?

## FACTUAL BACKGROUND

¶12. The City of Conrad hired Josephine Batoon, a Filipino woman, on September 6, 1976, as a general office clerk. On July 27, 1988, Batoon requested and obtained from the City an extended leave of absence from August 8, 1988, to September 30, 1988. Batoon planned to use that time to visit her relatives in the Philippines and to complete some personal business. The City granted Batoon's request and both parties expected her to return to work on Monday, October 3, 1988.

¶13. Batoon failed to return to work on October 3, 1988, as planned and missed five consecutive days of work from October 3, through October 7, 1988. Batoon had no prior excuse or permission from the City to miss the five extra days.

¶14. In 1986, Batoon signed a form acknowledging that she had read and understood the personnel policies and procedures adopted by the City, and at all times had access to the City personnel policies and procedures manual. Section four of the

**manual, entitled "Employee Discipline and Discharge" provides in pertinent part as follows:**

4.5.2. Group II Violations

Repeated absences without reasonable excuse (over four inexcusable tardies, and/or two inexcusable absences per calendar year shall be considered an offense);

4.5.2.1. Penalties Imposed for Group II Violations.

Employees who commit a first offense violation as outlined under Group II, Section 4.5.2., shall receive a written reprimand and/or immediate suspension from work without pay for one (1) week.

Employees who commit second-offense violations as outlined under Group II, Section 4.5.2., within one (1) calendar year from the first-offense violation of Group II, shall be terminated from city employment.

On October 6, 1988, the mayor of the City of Conrad, Thomas Hammerbacker, sent a letter to Batoon at her Conrad address in which he advised her that her unexcused absences from work for the four days from October 3 through October 6, 1988, constituted four inexcusable absences from work, or two Group II offenses pursuant to § 4.5.2. Group II Violations, within one calendar year. Hammerbacker stated that this warranted her termination pursuant to § 4.5.2.1. of the personnel policies and procedures manual unless she could show reasonable cause for her actions within twenty-four hours of receipt of his letter.

**¶15. Batoon received Hammerbacker's letter on October 11, 1988, and on the same date, sent a letter to Hammerbacker and the city clerk, Tom Thode, in which she explained:**

When we were planning our return to Manila, two of my cousins died. Both were from the same family. One died in Texas and the remains were shipped home, while the other lady

died in her home place. Both of these services were observed by all the family, as customs require. I tried to send a cablegram, but I was told that it would take two to three weeks to reach the United States because of the political problems. When we arrived in Manila, we found we could take a flight right away, so I was not able to place a telephone call, because it would take a long time. We flew into Seattle, rested a short while with a relative and then we drove straight through to Conrad. I called Tom Thode when I arrived and he told me that a letter had been sent to me.

I felt it was [my] responsibility to inform you of the reasons for my delay.

If the City Council wishes to have my resignation, I will supply it.

**¶16. On October 14, 1988, the mayor, the city attorney, the city clerk, and three members of the city council held a hearing so that Batoon could personally present her explanation. Following the meeting, the city council members unanimously passed a motion to terminate Batoon. Later that day, the City communicated its decision to Batoon by letter in which it explained that her absence from her employment constituted two offenses pursuant to § 4.5.2. of the personnel manual ("Group II Violations") within one calendar year, and was the reason for the termination of her employment.**

**¶17. On October 11, 1988, the day Batoon received the October 6, 1988, letter from the mayor, and before the October 14, 1988, meeting of the city council, the City placed an advertisement in the local newspaper for applicants for Batoon's position. The City processed twenty-two applications, and interviewed five applicants to fill Batoon's position. All of the applicants, according to their high school graduation date, appeared to be younger than Batoon at the time of her termination, and all of the applicants who were interviewed were Caucasian.**

### Issues raised by the City on direct appeal

### ISSUE 1

¶18. Did the District Court err when it concluded that Batoon did not abandon her job with the City of Conrad when she failed to report to work for five consecutive days?

¶19. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *See Peters v. State* (1997), 285 Mont. 345, 948 P.2d 250.

¶20. The District Court stated in its conclusion of law number ten:

The Court concludes a reasonable interpretation of the express provisions of the discipline policies of the City is that a non-probationary employee whose conduct is a first time infraction under either Group I or Group II, could receive a verbal warning or written reprimand.

The District Court further stated that, prior to using punitive discipline, the policy of the City is to give the employee notice and an opportunity to correct his or her behavior following the employee's first unexcused absence. The District Court concluded that an uninterrupted absence for four days without any intervening notice from the City that the first absence is considered unexcused, must be treated as a single absence or a single offense. This is the case, the District Court concluded, at least until the extended absence reaches the level of legal abandonment of the employment.

¶21. The City maintains that the District Court erred when it found that Batoon did not abandon her job after being absent from work for five consecutive days. The City gives several explanations regarding why the District Court erred in this respect. In the alternative, the City maintains that Batoon made it impossible for the City to impose a lesser sanction after her first two unexcused absences, such as a written reprimand and one week suspension, because she never notified the City of her whereabouts.

¶22. Batoon contends that the District Court interpreted the law correctly by concluding that she did not abandon her job after five unexcused absences. Batoon maintains that the theory of abandonment in Montana is typically applied to a property interest or right and § 70-9-803, MCA, speaks in terms of years for abandonment of certain types of property. Batoon emphasizes that the District Court

concluded that there was no evidence from which to deduce intent to abandon her job and that there was no honest belief on the part of the City or Batoon that she would abandon her job.

¶23. We agree with the conclusion of the District Court that a reasonable interpretation of the express provisions of the City's personnel policies and procedures manual is that a non-probationary employee, which Batoon was, whose conduct is a first time infraction pursuant to either Group I or Group II, would receive a verbal warning or written reprimand. This is consistent with the City's policy which requires notice to, and an opportunity for, the employee to correct the problematic behavior when the employee is absent from work without excuse for the first time. Because nothing in the City's personnel policies and procedures manual defines "unexcused absenteeism" or "inexcusable absences," as an absence which continues uninterrupted for five days without intervening notice from the City that the absence is considered unexcused or inexcusable, the absence must be treated as a single absence and a single offense. The City should have complied with its own written personnel policies and procedures manual and given Batoon notice of her violation and an opportunity to correct the problem. We agree with the District Court that regardless of whether Batoon was home to learn of such a notice, the City had a duty to make an effort to give her notice of her problematic behavior before discharge could result. Because the City violated the express provisions of its own written personnel policy and discharged Batoon without following the proper procedure, we conclude that the District Court correctly interpreted the law when it concluded that the discharge was wrongful pursuant to § 39-2-904(3), MCA.

ISSUE 2

¶24. Did the District Court err when it found that the City of Conrad violated its personnel policy?

¶25. As stated above, the District Court concluded that the provisions of the City personnel manual regarding employee discipline and discharge required the City to give Batoon a verbal or written reprimand and an opportunity to correct the problem behavior before discharge could result. Accordingly, the District Court concluded that the City wrongfully discharged Batoon pursuant to § 39-2-904(3), MCA.

¶26. The City maintains that Batoon was on notice that two unexcused absences is one offense and that two such offenses justifies termination because she was familiar with the City's personnel policies and procedures and was aware of the contents of the personnel policies and procedures manual. In the alternative, the City contends that because Batoon offered to resign, she established her agreement with the City's common sense interpretation of the provisions of the personnel policies and procedures manual which pertain to Group II violations. The City cites *Miller v. Citizens State Bank* (1992), 252 Mont. 472, 830 P.2d 550, to support its position that the City was forced to bypass the first level of sanctions because Batoon did not afford the City a sufficient opportunity to impose a sanction for her initial offense and that progressive discipline should not be superimposed upon the definition of "good cause" in Montana's Wrongful Discharge from Employment Act.

¶27. Batoon argues that according to § 39-2-904, MCA, she need only prove one of three elements: (1) that the discharge was in retaliation for her refusal to violate public policy or for reporting a violation of public policy; (2) that she was not on probationary status and the discharge was not for good cause; or (3) the City violated the express provisions of its own written personnel policy. Batoon maintains that she satisfied the third element and did not violate the personnel policy when she failed to notify the City of her late return from the Phillipines.

¶28. The standard of review of a district court s findings of fact is whether they are clearly erroneous. *See Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906 (citing *Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). We adopted a three part test in *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287, to determine whether the findings are clearly erroneous. The test provides that: (1) the Court will determine whether the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, the Court will determine if the trial court has misapprehended the evidence; (3) if the findings are supported by substantial evidence and that evidence has not been misapprehended, this Court may still conclude that "[a] finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." *DeSaye*, 250 Mont. at 323, 820 P.2d at 1287 (citing *United States v. United States Gypsum Co.* (1948), 333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746); *See also Daines*, 269 Mont. at 324-25, 888 P.2d at 906.

¶29. Section 4.0 of the City's personnel policies and procedures manual addresses "Employee Discipline and Discharge." Section 4.1.(b)(1) states that it is the policy of the City in the application of an employee disciplinary procedure to "consider corrective discipline before applying punitive discipline, in all appropriate instances." "Corrective discipline" is defined in Section 4.2. as constructive, corrective action taken to improve employee attendance or performance problems, and may involve counseling, may be documented, and may include specific courses of action to improve employee behavior. "Punitive discipline" is defined in Section 4.3. as action which punishes an employee such as a warning letter, suspension, or termination. Section 4.4. of the manual describes the disciplinary steps involved in a disciplinary action, and indicates that the discipline may begin at any of the steps depending upon the seriousness of the offense. The steps proceed from a verbal warning to a written warning to suspension without pay pending discharge.

¶30. Section 4.5. of the policy manual identifies three groups of specified work place violations and further identifies the penalties for such violations. Section 4.5.1. identifies infractions labeled as "Group I Violations," which include "unexcused absenteeism." No definition is provided for "unexcused absenteeism." A first infraction pursuant to Group I Violations results in a verbal or written reprimand; and a second infraction within one calendar year of the first results in suspension without pay for one week. Section 4.5.2. identifies infractions labeled as "Group II Violations," which include "repeated absence without reasonable excuse (over four inexcusable tardies, and/or two inexcusable absences per calendar year shall be considered an offense)." No definition is provided for "inexcusable absences." A first offense infraction under Group II Violations results in a written reprimand and/or immediate suspension without pay for one week. A second offense infraction within a calendar year from the first offense results in termination from employment.

¶31. The District Court concluded, and we agree, that a reasonable interpretation of the express provisions of the City's personnel policies and procedures manual is that a non-probationary employee whose conduct is a first time infraction according to either Group I or Group II would receive a verbal warning or written reprimand and/or immediate suspension without pay for one week. Because nothing in the policy manual defines "unexcused absenteeism" or "inexcusable absences" we must treat Batoon's absence without intervening notice from the City that the absence is unexcused or is inexcusable as a single absence or a single offense. As stated above, we agree with the District Court that there is no evidence that Batoon's five-day

absence was intended to be an abandonment of her position with the City.

¶32. Accordingly, we conclude that the District Court's finding that the City violated its written personnel policies and procedures manual in violation of § 39-2-904(3), MCA, is supported by substantial evidence. We further conclude that the trial court has not misapprehended the evidence and that a review of the record does not leave this Court with the definite and firm conviction that a mistake has been committed.

ISSUE 3

¶33. Did the District Court correctly determine that Batoon should be entitled to lost earnings?

¶34. The City maintains that the District Court erred when it determined that Batoon is entitled to lost earnings. We have previously held that the standard of review regarding an award of damages is abuse of discretion. *See Edington v. Creek Oil Co.* (1984), 213 Mont. 112, 690 P.2d 970.

¶35. The City's first assignment of error with regard to the District Court's award of lost earnings is that Batoon did not actively seek work during most of the four years covered by Montana's Wrongful Discharge from Employment Act, § 39-2-905, MCA. Specifically, the City argues that Batoon did not seek work for four months immediately after her discharge by the City, and later began receiving social security retirement and supplemental income in the fall of 1990. The City contends that for two and one-half years of the four-year period, Batoon did not seek employment and, therefore, did not exercise reasonable diligence to mitigate her damages. Therefore, the City maintains, Batoon is not entitled to any damages during those periods of time, or is only entitled to a lesser amount of damages. Additionally, the City contends that because Batoon's normal life expectancy is sixty-five years of age, any award of lost earnings should not encompass any time period beyond that age, or August 27, 1991.

¶36. The District Court found that Batoon had applied for jobs with private businesses and governmental agencies. The court noted that Batoon moved to Great Falls from Conrad in order to find employment, that she applied for numerous jobs in writing, that she went to the job service on numerous occasions, and applied for jobs which she was capable of performing. The District Court found, and we agree,

that the record does not reflect any refusal or failure on Batoon's part to seek employment. In fact, the record in this case demonstrates that Batoon went out of her way to find employment, and when she could not, she began drawing social security as soon as possible in order to support herself.

¶37. We have held that the burden of proof is on the employer to demonstrate that the claimant did not diligently seek employment. *See Martinell v. Montana Power Co.* (1994), 268 Mont. 292, 866 P.2d 421. In this case, the City did not offer any testimony to demonstrate that jobs existed in the vicinity of Conrad for which Batoon was qualified, or that she turned down any job offers within her geographic area. Because the City failed to carry its burden to establish that Batoon did not diligently seek employment, we conclude that the District Court did not abuse its discretion when it awarded Batoon lost earnings based on its finding that she did not fail to diligently seek employment.

¶38. The City's second assignment of error with regard to the District Court's award of lost earnings is that because the City discharged Batoon in violation of its personnel policy, she is not entitled to four years' worth of damages. The City maintains that wrongful discharge based upon a violation of the express provisions of an employer's own written personnel policy is the third and least grievous basis for wrongful discharge. In support of this assertion, the City offers § 39-2-904, MCA, which states:

A discharge is wrongful only if:

(1) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

(2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or

(3) the employer violated the express provisions of its own written personnel policy.

¶39. The City offers no authority for its theory. Moreover, even if the City's theory is true, the District Court specifically noted that because it found a violation of the City's own personnel policies and procedures manual, it was unnecessary to

determine whether the discharge was without good cause.

¶40. Regardless, § 39-2-905, MCA, does not indicate in any way that one type of wrongful discharge is entitled to more or less damages than the others. The only limitation on the amount of damages pursuant to that statute is that actual earnings within the four years must be deducted from the award and that amount expended by the employee to seek new employment must be awarded to the employee.

¶41. Accordingly, we conclude that the District Court did not abuse its discretion when it awarded lost earnings without considering the City's argument that the discharge in this case was less reprehensible than the other two reasons for wrongful discharge that are mentioned in the statute.

¶42. The City's third assignment of error regarding the District Court's award of damages is that Batoon had a duty to accept a job offer in Nevada after her discharge by the City. In *Dawson v. Billings Gazette* (1986), 223 Mont, 415, 417, 726 P.2d 826, 828, however, we held that while "an injured party is not required to seek employment in another line of work or to move to a different locality . . . he or she must exercise ordinary diligence." We agree with the conclusion of the District Court that Batoon was not required to move to another state in order to satisfy the "ordinary diligence" requirement for wrongful discharge damages. In *Matter of Unfair Labor Practice v. Young* (1984), 211 Mont. 13, 686 P.2d 185, we held that a discharged employee need only make reasonable attempts to find employment. We agree with the District Court that, according to the evidence presented, Batoon did seek employment with ordinary diligence and was not required to move to a different state to obtain employment.

¶43. Accordingly, we conclude that the District Court's award of lost earnings to Batoon was not an abuse of its discretion.

ISSUE 4

¶44. Did the District Court err when it failed to conclude that the judgment against the City should not accrue any interest if affirmed by this Court and paid within two years?

¶45. The standard of review of a district court s conclusions of law is whether the

court s interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04).

¶46. The City maintains that the District Court erred when it awarded Batoon interest in the amount of ten percent simple interest from the date of the District Court's judgment. Specifically, the City contends that the District Court's award of interest for the first two years after the entry of judgment, is in direct contravention of § 2-9-317, MCA, which provides that "[e]xcept as provided in 18-1-404(1)(b), if a governmental entity pays a judgment within 2 years after the day on which the judgment is entered, no penalty or interest may be assessed against the governmental entity."

¶47. Accordingly, the City argues that once the City notified the District Court of this statute, the District Court should have, pursuant to our decision in *Weber v. State* (1993), 258 Mont. 62, 852 P.2d 117, amended its order and judgment *nunc pro tunc* even after the notices of appeal were filed, to provide that no interest may be assessed on Batoon's judgment if paid by the City within two years of its entry.

¶48. In *Weber*, a jury concluded that the State had wrongfully discharged Weber. The original judgment did not provide for costs or post-judgment interest. Weber, therefore, filed a post-judgment motion to have the court include costs. The court granted Weber's motion for costs and also included "interest thereon at 10% per annum until paid." The State, thereafter, filed a Rule 59(g), M.R.Civ.P., motion to amend the amended judgment in which it requested that the court enter a *nunc pro tunc* order striking the post-judgment interest from the order because of the State's immunity to post-judgment interest pursuant to § 2-9-317, MCA. After the motion was filed, but prior to the court's decision on the motion, Weber filed his notice of appeal and the State filed its cross-appeal. Only after both notices of appeal were filed did the district court grant the State's motion and issue a *nunc pro tunc* order assessing costs but eliminating interest on the judgment award pursuant to § 2-9-317, MCA.

¶49. Although the facts of this case are similar to those in *Weber*, a critical distinction must be made between the timing of the objection to the award of interest in *Weber* and the timing of the objection to the award of interest in this case. In *Weber,* the State objected to the award of interest in its motion to amend the amended judgment

prior to either party filing a notice of appeal. In this case, on the other hand, the City failed to object to the award of interest until more than five months after the date it had filed its notice of appeal.

¶50. Additionally, the City had previously filed a motion in which it requested the court to alter and amend the court's judgment with regard to damages. Nowhere in that motion did the City object to the court's award of interest.

¶51. Pursuant to Rule 2, M.R.App.P., this Court can review any decision which is excepted or objected to by a party. Rule 46, M.R.Civ.P., provides that a party, if he or she had the opportunity, has a duty to make known to the trial court its objections and exceptions to the court's rulings. We agree with the District Court that the City had the opportunity and, therefore, the duty to make known to the trial court when it filed its motion pursuant to Rule 59(g), M.R.Civ.P., that it disputed the court's ruling on interest. As we held in *Story v. City of Bozeman* (1993), 259 Mont. 207, 217-18, 856 P.2d 202, 208, when a party did not solicit a ruling from the district court, but merely presented the issue on appeal, the issue is not preserved on appeal. Likewise, in *Unified Industries v. Easley*, 1998 MT 145, 961 P.2d 100, 55 St. Rep. 574, we held that issues or theories which are not argued prior to trial are not appealable. If the City believed that § 2-9-317, MCA, applied, then it should have argued this before the District Court while the District Court still had jurisdiction over the case and while the District Court had the opportunity to address the argument.

¶52. Accordingly, we conclude that the District Court did not err when it denied the request by the City to remove the award of interest from the judgment amount because the City failed to file a motion to alter or amend the judgment in the proper manner and in a timely fashion. Because the City did not object to the award of interest until after it had filed its notice of appeal, the District Court was deprived of further jurisdiction over the issue. We therefore conclude that this issue is not appealable because it was not argued or objected to in front of the District Court and that the District Court's interpretation of the law is correct.

ISSUE 5

¶53. Did the District Court err by not dividing the costs of production of the District Court transcript on appeal?

¶54. The standard of review of a district court s conclusions of law is whether the court s interpretation of the law is correct. *See Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674.

¶55. The City maintains that because Batoon filed a cross-appeal in this case, she is responsible for paying a portion of the cost of producing the transcript on appeal. The City cites *Weber*, 258 Mont. at 66-67, 853 P.2d at 120, in support of its position. In *Weber*, the appellant paid the full cost of the transcript; however, he maintained that since both parties used the transcript for their appeals both parties should share the cost of the transcript. As a result of the appeal in *Weber*, both parties were partially successful and partially unsuccessful and the district court, therefore, awarded part of the cost of the transcript to the respondent. On the other hand, in this case, both Batoon and the City were unsuccessful in their appeals. We have held that only the successful party on appeal is entitled to recover his or her costs from the other party. *See Weber*, 258 Mont. at 66-67, 852 P.2d at 120. Because the City was unsuccessful on its appeal, we conclude that it cannot recover any portion of the cost of the transcript from Batoon.

¶56. Moreover, Rule 9(b), M.R.App.P., states that "the cost of producing the transcript shall be paid by the appellant, or the appellant shall make satisfactory arrangements with the reporter for the payment of such cost." Rule 23(h), M.R.App. P., indicates that the first party to file an appeal is deemed the "appellant" for purposes of the other rules of appellate procedure.

¶57. We, therefore, conclude that the District Court's interpretation of the law is correct and affirm the judgment of the District Court that the City is responsible for the cost of producing the transcript on appeal.

<u>Issues raised by Batoon on cross-appeal</u>

ISSUE 1

¶58. Did the District Court err when it concluded that Batoon had no property interest in her continuing employment with the City of Conrad?

¶59. The District Court's determination that Batoon had no property interest in her continuing employment with the City is a conclusion of law. As we stated above, the

standard of review of a district court s conclusions of law is whether the court s interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶60. Batoon maintains that Montana's Wrongful Discharge Act, which requires good cause for dismissal, in conjunction with written personnel policies which require due process, creates a property interest in employment. Therefore, Batoon contends, she was entitled to meaningful due process and a hearing prior to her discharge.

¶61. Batoon bases her claim that the City's personnel policies and procedures manual requires due process upon the fact that the manual requires the City to act with fairness and consistency toward its employees, that it disallows the firing of an employee without specific steps being taken, including the requirement that the affected employee be given the opportunity to provide a "reasonable" excuse for his or her conduct, and that the manual provides for progressive discipline steps prior to dismissal. All of these things, according to Batoon, enhance the employee's expectation of continuing employment and a property interest in employment with the City.

¶62. The District Court concluded that because Batoon failed to point to any state regulation which could arguably create a specified term of her employment with the City, she does not have a property interest in her employment. The District Court further concluded that the language of the City's personnel policies and procedures manual does not rise to the level of the state regulations that this Court interpreted in *Boreen v. Christensen* (1994), 267 Mont. 405, 420, 884 P.2d 761, 770, to give an employee a property interest in his or her employment. The regulations interpreted in *Boreen* clearly state that no discharge from employment would occur for non-probationary employees unless "just cause" was demonstrated. The regulations defined "just cause." The District Court concluded that the City's manual does not limit the grounds for discharge, as did the regulatory language in *Boreen*, though it does enumerate, in a nonexclusive fashion, certain reasons for which discharge is the appropriate discipline. Therefore, the District Court concluded that the language of the City's personnel policy does not create a property interest in continued employment which cannot be removed without due process.

¶63. The United States Supreme Court has held that an employee is entitled to due process in the decision to terminate his or her employment if the employment is or

had become a property interest. *See Cleveland Bd. of Educ. v. Loudermill* (1985), 470 U.S. 532, 538, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494, 501. This Court has held that a "property interest" is not created by the Constitution but exists in employment only if "some written contract, state law, or regulation . . . states or otherwise provides a specified term of employment." *Boreen*, 267 Mont. at 420, 884 P.2d at 770. The only written document which Batoon contends could create a "specified term of employment" for non-probationary employees such as herself, is the City's personnel policies and procedures manual.

¶64. We agree with the District Court that the language of the City's personnel policy manual does not create a property interest in employment sufficient to trigger the due process protections afforded by the Fourteenth Amendment of the United States Constitution. Accordingly, we conclude that the District Court correctly interpreted the law when it concluded that Batoon had no property interest in her continuing employment with the City of Conrad.

ISSUE 2

¶65. Did the District Court err when it concluded that the City of Conrad had not discriminated against Batoon based upon her age and race?

¶66. Once again, the standard of review of a district court s conclusions of law is whether the court s interpretation of the law is correct. *See Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674.

¶67. Batoon maintains that although the District Court was correct when it found a *prima facie* case of age and race discrimination, the District Court erred when it failed to conclude that Batoon proved that the City's stated reason for her discharge was a pretext. Batoon contends that she did show, by the series of events after her arrival from the Philippines, and the hiring of a much younger woman, that her discharge was discriminatory in nature. Batoon claims that the District Court ignored much of the significant evidence which proved discrimination. For example, Batoon maintains that she was much better qualified for her position than the younger woman who replaced her. She further alleges that none of the older women who applied for Batoon's position were interviewed, and yet these older women had better credentials than the woman hired to replace Batoon. She maintains that the people interviewed for her position were generally the youngest and least qualified

for the position. Batoon concludes that the entire selection procedure for her position was a pretense because the City had made its decision to hire a young woman no matter who applied.

¶68. The City denies that its discharge of Batoon was predicated upon intentional discrimination and maintains that the reason for Batoon's discharge was her unexcused week of absence which rendered her unable to satisfactorily perform her job duties during that time, caused significant disruption of the City's operations, and brought hardship upon her co-workers and supervisor.

¶69. The District Court concluded that Batoon did not demonstrate by a preponderance of the evidence that the City intentionally discriminated against her on the basis of her age or race in its decision to terminate her employment and, therefore, that the City did not violate the Age Discrimination in Employment Act of 1967 (ADEA) or Title VII.

¶70. Once an employee establishes a *prima facie* case pursuant to *McDonnell-Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. Once the employer provides a reason for the discharge that is legally sufficient to justify a judgment for the employer, the employee has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. *See Texas Dep't of Community Affairs v. Burdine,* (1981) 450 U.S. 248, 255-56, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207, 216-17. The employee may prevail in two ways. He or she can demonstrate that a discriminatory reason more likely motivated the employer, or demonstrate that the employer's asserted reason is not credible. *See Burdine,* 450 U.S. at 265, 101 S. Ct. at 1095, 67 L. Ed. 2d at 217.

¶71. We agree with the District Court that although the burdens of production alternate according to the *McDonnell-Douglas* analysis, the ultimate burden of persuasion remains with the claimant to establish by a preponderance of the evidence that the employer intentionally discriminated against the claimant in the adverse employment decision. *See St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407, 416. It is not enough to support a conclusion of discrimination for a court to simply disbelieve the reason offered by the defendant for its decision; rather, the court must also be persuaded that discrimination was the

real reason for the employer's action. *See St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. at 2752, 125 L. Ed. 2d at 422; *Heiat v. Eastern Montana College* (1996), 275 Mont. 322, 328, 912 P.2d 787, 791.

¶72. As with the District Court, we conclude that Batoon has not convinced this Court that the reason for her discharge was age or race discrimination. Although Batoon was replaced by a younger individual, a fact which is sufficient to establish a *prima facie* case of discrimination and satisfy the first prong of the three-part *McDonnell-Douglas* test, the evidence presented is not sufficient to prove by a preponderance of the evidence that Batoon's week-long absence was not the actual and legitimate reason for her discharge.

¶73. Accordingly, we conclude that the District Court correctly interpreted the law when it concluded that the evidence presented is not sufficient to ultimately demonstrate that the motive for the replacement of Batoon was her age or race.

¶74. The judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:


/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.


Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

¶75. I concur with the majority's resolution of the five issues raised on direct appeal. I also concur with the majority's resolution of the second issue raised on cross-appeal. However, I dissent from the majority's conclusion that the plaintiff, Josephine Batoon, had no property interest in her continued employment with the City of Conrad.

¶76. In *Boreen v. Christensen* (1994), 267 Mont. 405, 884 P.2d 761, we held that personnel policies of the State of Montana which provided that the plaintiff in that case could not be discharged without "just cause" created a property interest in her employment which could not be taken away without due process of law. We concluded that the just cause provision provided Boreen with a specified term of employment which lasted until there was "just cause" for her termination. For that reason, we concluded that she was not an at-will employee.

¶77. We also acknowledged that our prior decisions had not addressed whether the Wrongful Discharge From Employment Act creates a property interest in continued employment through the good cause requirement found at § 39-2-904(2), MCA. We said:

[A]s discussed in some detail below, *Stokes* did not correctly interpret our prior case law, nor have we addressed directly the issue of whether the WDFEA creates a property interest in continued employment through the good cause requirement of § 39-2-904(2), MCA. That precise issue, moreover, is not presently before this Court, and we are not deciding that question in this case.

*Boreen*, 267 Mont. at 414, 884 P.2d at 766.

¶78. Section 39-2-904(2), MCA, provides that "[a] discharge is wrongful only if . . . (2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment."

¶79. In other words, employees in Montana are provided the same right to employment absent good cause for their termination pursuant to statute that the employee in *Boreen* was provided by administrative rule. Batoon was no less entitled to a specified term of employment than Boreen. Based on the reasoning in *Boreen*, Batoon had no less a property interest in her employment than the plaintiff in that case, and she was no less entitled to due process before being deprived of that property right.

¶80. For these reasons, I dissent from that part of the majority opinion which concludes that the plaintiff, Josephine Batoon, had no property interest in continued

**employment based upon the "good cause" provision found at § 39-2-905(2), MCA, of Montana's Wrongful Discharge From Employment Act. I otherwise concur in the majority opinion.**

/S/ TERRY N. TRIEWEILER